[L. A. No. 5283. In Bank.—January 29, 1918.]

In the Matter of the Estate of GERTRUDE C. PUSEY, Deceased. C. S. CROOKSHANK et al., Appellants; S. H. FINLEY, Respondent.

APPEAL—JUDGMENT REVERSED WITHOUT FURTHER DIRECTION—EFFECT— NEW TRIAL—POWER OF LOWER COURT TO GRANT.—On the reversal of a judgment by an appellate court without further direction, the parties are placed in the same position as if the case had never been tried, and the court below acts within its powers in directing that a new trial shall be had.

FOREIGN JUDGMENT — COLLATERAL ATTACK — SERVICE OF SUMMONS BY PUBLICATION—EVIDENCE—AFFIDAVIT ·AND ORDER FOR PUBLICATION. A foreign judgment or the judgment of a sister state may be attacked collaterally and impeached by evidence not incorporated in the technical "judgment-roll," and, therefore, although under the laws of Oregon the affidavit and order for publication of summons form no part of the judgment-roll of a judgment on a service pro-

cured by publication in that state, such affidavit and order may be introduced as evidence in this state to impeach the judgment and must be considered.

ID.—AFFIDAVIT FOR PUBLICATION OF SUMMONS — DUE DILIGENCE.— Where an Oregon statute authorized the publication of summons "when the defendant cannot, after due diligence, be found within the state, and when that appears to the satisfaction of the court or the judge thereof," an affidavit of the plaintiff that he has made diligent search and inquiry, "and knows that said defendant is not within the state of Oregon," is competent evidence in a California court to prove the fact that the defendant could not be found within the state, it being a positive statement that the plaintiff knew that the defendant was not at that time within the state.

ID.—FOREIGN LAW—PRESUMPTION.—It being adjudicated law in California that where there is not an entire absence of evidence in an affidavit on behalf of a plaintiff to sustain an order for publication of a summons it cannot be regarded as void, and it not being shown that the law of Oregon, on this point, differs from that of California, it is therefore presumed to have been the same.

ID.—ORDER FOR PUBLICATION OF SUMMONS—MAILING TO PRESENT ADDRESS OF DEFENDANT—REASONABLE DILIGENCE TO ASCERTAIN ADDRESS.—Where the Oregon law required the court ordering publication to direct the mailing of a copy of the summons to the defendant unless it appeared that his residence "is neither known to the party making the application, nor can with reasonable diligence be found by him," and the affidavit on which an order for publication was obtained did not purport to aver that the residence of the defendant could not, by reasonable diligence, have been found by the plaintiff, nor that he used reasonable or any diligence to ascertain it, and the order contained no directions for mailing, such order for publication, if there were no other foundation for it, would be invalid under the Oregon statute.

ID.—RECITALS OF DUE SERVICE OF PROCESS.—Recitals in a decree of due service of process are conclusive of the fact unless the recital is contradicted by other parts of the record, or by proof independent of the record, where such proof is admissible.

ID.—RECITALS IN DECREE — REFERENCE TO AFFIDAVITS — PRESUMPTION THAT THERE WAS MORE THAN ONE AFFIDAVIT.—Where an Oregon judgment recited that service of summons was made by publication of the summons, the same having been ordered "upon due and proper affidavits," and the transcript certified by the clerk of the Oregon court and introduced in evidence in a California court contained only one affidavit which was insufficient to support the order made, it would be presumed on a collateral attack, from the use of the word "affidavits," in the plural, that there was another affidavit which was sufficient to support the order, and that, for some reason, the clerk failed to incorporate it in the transcript.

ID.—PUBLICATION OF SUMMONS—DATE OF ORDER FOR PUBLICATION.—
The Oregon law not requiring that a summons should be dated,
but requiring that a published summons shall contain, besides other
requirements, "the date of the order for service by publication,"
a date, which was in fact the correct date of such order, but which
appeared only at the foot of the summons in the words "Dated
September 11, 1893," following the signatures of the plaintiff's
attorneys, was presumed to be intended as the date of the publica-
tion order which was referred to in the summons.

ESTATES OF DECEASED PERSONS — WILL — REVOCATION BY MARRIAGE —
VALIDITY OF DIVORCE FROM FORMER HUSBAND.—Record of a divorce
judgment rendered by an Oregon court examined, and the judgment
held to be valid, so that a second marriage of the divorced wife
in California was also valid and effective, under section 1300 of the
Civil Code, as a revocation of a will made by her previously to the
second marriage.

APPEALS from an order of the Superior Court of Orange
County admitting a will to probate, and from an order of the
same court denying a petition for letters of administration.
Z. B. West, Judge.

The facts are stated in the opinion of the court.

C. D. Latourette, and Williams & Rutan, for Appellants.

Steele Finley, E. J. Fleming, and B. F. Woodward, for
Respondent.

SHAW, J.—Gertrude C. Pusey died on October 1, 1914,
leaving property subject to administration in Orange County,
California. S. H. Finley filed a petition in the superior court
of Orange County for the probate of a document dated Sep-
tember 20, 1913, alleged to be the last will of said decedent.
Henry F. Pusey, claiming to be the surviving husband of said
decedent, filed a contest of said will on the ground that he
was lawfully married to said decedent on June 15, 1914, and
that by reason of said marriage said will was by law revoked.
(Civ. Code, sec. 1300.) M. M. Crookshank, as nominee of
H. F. Pusey, the alleged husband of said decedent, filed in
said court a petition for letters of administration upon the
estate of said decedent. The two petitions came on for trial,
whereupon the court made its orders admitting the alleged
will to probate, and denying the petition of Crookshank for
letters of administration. Appeals were duly taken from

CLXXVII Cal.—24

these orders and in July, 1916, this court reversed both of them. (*In re Pusey,* 173 Cal. 141, [159 Pac. 433].) It was the contention of Finley that the claim that Pusey was the surviving husband of the decedent was not sustained, because in the year 1891 he was lawfully married to one Julia Jarvis, who was still living, and that said marriage still existed, and that his subsequent attempted marriage to the decedent was for that reason void. In proof of this contention Finley introduced in evidence the record of a judgment of the circuit court of the county of Clackamas, state of Oregon, rendered on November 13, 1893, purporting to be a judgment divorcing said Pusey and his said former wife Julia, which judgment he claimed was void because of the failure to obtain jurisdiction of the defendant therein. The orders admitting the will to probate and denying administration were reversed on the ground that no evidence had been given to show whether or not the former wife, Julia, was alive at the date of the marriage of Pusey to said decedent, and that in view of the presumption that persons were innocent of crime, it would be presumed that the former wife was dead at the time of the subsequent marriage, and that said Pusey was therefore free to enter into said subsequent contract of marriage. The judgment of the court was simply that the two orders appealed from be reversed. There was no direction for further proceedings in the court below.

Thereafter on motion of the proponent of the will, the court, over the objection of contestant, proceeded to try the causes again, and again made orders therein admitting the will to probate and denying the petition for administration. It appeared that during the pendency of the appeal M. M. Crookshank, the petitioner for administration, had died, and that a new petition was then filed by C. S. Crookshank, who had been subsequently nominated as administrator by Pusey. Thereupon Pusey appealed from the order admitting the will to probate and Crookshank appealed from the order denying his petition for administration. These are the appeals now presented for our consideration.

The appellants first contend that the entire matter was concluded by the judgment of this court upon the former appeals, and that the court had no power to try the causes again, and could do nothing more than deny probate of the will and make an order appointing Crookshank as adminis-

trator of the estate. His theory upon this point is that where this court reverses a judgment or order without special direction to the court below to proceed further, the case is concluded and the court below is without power to act further. except to carry out the judgment of the supreme court by giving the relief demanded by the party who is successful in the appeal. There is no merit whatever in this contention. The contrary is thoroughly settled by numerous decisions of the court. In *Sharp* v. *Miller,* 66 Cal. 98, [4 Pac. 1065], upon a similar question, the court said: "The reversal of the judgment and order denying the motion for a new trial when the cause was here before, placed the parties in the lower court in the same position as if the case had never been tried, with the exception that the opinion of this court must be followed so far as applicable in the new trial." When an order has been reversed the effect is that "it no longer had any vitality or force, and the result was to leave the proceeding where it had stood before that order was made." (*Estate of Mitchell,* 126 Cal. 250, [58 Pac. 549].) In *Ashton* v. *Heydenfeldt,* 124 Cal. 14, [56 Pac. 624], speaking of a decree which had been reversed, the court said, "but that decree having been reversed—vacated—on appeal, the matter stood as though no decree had ever been made." Many cases decide the same proposition. (*Stearns* v. *Aguirre,* 7 Cal. 443; *Phelan* v. *Board,* 9 Cal. 16; *Davidson* v. *Dallas,* 15 Cal. 84; *Ryan* v. *Tomlinson,* 39 Cal. 639; *Myers* v. *McDonald,* 68 Cal. 162, [8 Pac. 809] ; *Falkner* v. *Hendy,* 107 Cal. 49, [40 Pac. 21, 386].) The court, therefore, was acting within its powers in directing that a new trial of the two petitions should be had.

Upon the second trial it was shown that Julia, the former wife of Pusey, was still living; that she was informed of the decree of divorce in favor of Pusey against her shortly after it was rendered, and took no steps to vacate or defeat it; that on July 18, 1902, a marriage ceremony was regularly performed between her and one J. H. Proctor; that they have ever since lived together as husband and wife; that on November 6, 1906, Henry F. Pusey was again married to one Kittie E. Paine, who thereafter, on May 7, 1907, duly obtained a judgment of divorce from him. It inferentially appears, and it is not disputed, that Henry F. Pusey never instituted any other action for divorce from his first wife Julia, or obtained any decree of divorce from her, other than the decree of 1893 aforesaid. It would follow, therefore, that

if that decree is void he still remains her lawful husband; that his subsequent marriages were void; that he is not the surviving husband of the decedent nor entitled to succeed to any part of her estate or to nominate a person to apply for letters of administration thereon, or to contest her will, and that a will made by her prior to said attempted marriage to him would not be revoked by that marriage. The decision of the case, therefore, depends upon the question whether or not the decree of the Oregon court in 1893, purporting to divorce Henry F. Pusey from his wife Julia, is valid. Upon the former appeal the court held that the presumption of innocence and death, above mentioned, rendered it unnecessary to determine this question.

A document was introduced in evidence duly authenticated by the certificate of the clerk of Clackamas County, Oregon. The certificate stated that "the annexed transcript of record, including decree, has been compared by me with the original files on record in this office, and that it is a correct transcript therefrom, and of the whole of said original files, as the same appear of record in my office and in my custody." The transcript on its face appears to be a copy of the record and papers in the proceedings in the case of Henry F. Pusey v. Julia Pusey, for a divorce, culminating in the decree of divorce rendered on November 13, 1893. It is claimed by the respondent that the decree is void for the reason that the summons was not served on the defendant, except by publication, and that the affidavit for publication, the order for such publication, and the summons as published, were not in conformity with the laws of Oregon then in force upon the subject, and consequently that they were ineffectual to confer upon the court jurisdiction to render the decree against the defendant.

The appellants claim that under the law of Oregon the affidavit and order for publication of summons form no part of the judgment-roll and cannot be considered, upon collateral attack, as evidence to impeach the validity of the decree. This was the rule in force in this state, with regard to collateral attacks upon domestic judgments, during the time when our code was the same as the law in force in Oregon in 1893. (*Hahn* v. *Kelly,* 34 Cal. 404, [94 Am. Dec. 742]; *Estate of McNeil,* 155 Cal. 342, [100 Pac. 1086].) But in this case the question is unimportant. The decree was rendered in Oregon. So far as this point is concerned it stands upon the

same footing as a foreign judgment. The invalidity of a foreign judgment or of a judgment of a sister state may be shown collaterally by evidence which is not incorporated into the part of the record constituting the technical judgment-roll. (*Estate of Hancock*, 156 Cal. 812, [134 Am. St. Rep. 177, 106 Pac. 58].) The copies of the affidavit and order for publication, aforesaid, were introduced as evidence to impeach the judgment and they must be considered.

The laws of Oregon on the subject were introduced in evidence, and it was stipulated at the trial that any decision of the supreme court of Oregon pertinent to the case should be deemed to be in evidence, and could be used either on the trial or on appeal to prove the law of that state. The statute provided that when "the defendant cannot after diligence be found within the state, and when that appears by affidavit to the satisfaction of the court or the judge thereof," the court shall order that the service be made "by publication of a summons." On the subject of diligence the affidavit states "that personal service of summons herein within this state cannot be made on the defendant, and that the sheriff (of the county) having made due return thereof on the back of said original summons to that effect after due diligence and the plaintiff has made diligent search and inquiry and knows that said defendant is not within the state of Oregon." This is a positive statement by the plaintiff that he knows that the defendant was not at that time within the state. If that were true, then, of necessity she could not have been found within the state, even with the utmost diligence, or, in the words of the statute aforesaid, it would be true that "the defendant cannot after diligence be found within the state." It was possible that the plaintiff may have had positive knowledge that she was not then within the state. The affidavit was therefore competent evidence tending to prove the fact that the defendant could not be found within the state, and it was sufficient, so far as that point was concerned. As was said in *Rue* v. *Quinn*, 137 Cal. 656, [66 Pac. 217], "there is not an entire absence of evidence in the affidavit on behalf of the plaintiff to sustain the order, and it cannot be regarded as void." (*Anderson* v. *Goff*, 72 Cal. 69, [1 Am. St. Rep. 34, 13 Pac. 73]; *Hoffman* v. *Superior Court*, 151 Cal. 390, [90 Pac. 939]; *People* v. *Wrin*, 143 Cal. 13, [76 Pac. 646].) It is not shown that the law of Oregon on this point differs from

that of California, and it is, therefore, presumed to have been the same.

The Oregon law further provided that "in case of publication, the court or judge shall also direct a copy of the summons and complaint to be forthwith deposited in the postoffice, directed to the defendant at his place of residence, unless it shall appear that such residence is neither known to the party making the application nor can with reasonable diligence be ascertained by him." On this subject the affidavit states only this: "That defendant's present address and whereabouts are to the plaintiff unknown, excepting that the last he heard of her she was somewhere in the state of California." This does not even purport to aver that the residence of the defendant could not by reasonable diligence have been found by him, nor that he used reasonable, or any, diligence, to ascertain it. The facts necessary to sustain an order for publication of summons which did not direct mailing of a copy of the summons and complaint to the residence of the defendant, did not appear from this affidavit. The order for publication contained no directions for mailing such copy. If no other foundation were laid for the order it would be invalid under the statute quoted. The decree itself, however, contained the following recital: "Service of summons having been made by publication, the same having been ordered herein upon due and proper affidavits having been filed and approved by the Hon. Loyal B. Stearns, Judge of the 4th Judicial District of the State of Oregon, during the absence from Clackamas County, Oregon, of the Hon. T. A. McBride, Judge of this court. The publication of summons having been duly approved according to law," etc. The rule on this subject is that such recitals in a decree are conclusive of the fact that due service of process had been made, unless the recital is contradicted by other parts of the record, or by the proof made independently of the record, where such proof is admissible. If the recital is sufficient and the other parts of the record are equivocal, or if the independent proof is not of necessity inconsistent with the recital, such recital will prevail and the judgment will be held valid by virtue thereof. In the present case the recital states that the publication was ordered "upon due and proper affidavits," filed and approved by the judge making the order. The transcript certified by the clerk contains but one affidavit, and that does not support

the order of publication as made. If the recital mentioned one only, it would be presumed that it referred to the affidavit in the record, and the decree would be held void. But the recital imports that at least two affidavits were filed to obtain the order, and we must, therefore, upon this collateral attack, presume that there was another affidavit which was sufficient to support the order in this particular, and that for some reason the clerk failed to incorporate it in the transcript introduced in evidence. The certificate of the clerk does not, of necessity, show the contrary. It states that the document is a correct transcript "of the whole of said original files as the same appear of record in my office and in my custody." The certificate was made in the year 1914. It may be that another affidavit was filed in 1893, and that by some means it had been lost or removed from the files and was not in the custody of the clerk or in his office in 1914. The law does not require that such affidavits be recorded, and it is to be presumed that it was merely filed. This rule is well supported by authority. Thus in *Hahn* v. *Kelly,* 34 Cal. 407, [94 Am. Dec. 742], where the record contained a recital of service, the court said: "To illustrate: Suppose that portion of the judgment-roll denominated the 'affidavit or proof of service' shows that personal service was made upon the son of defendant, and the remainder of the roll says nothing about service. We then have a want of jurisdiction appearing upon the face of the record. But suppose the judgment states that the defendant appeared, or that personal service was made upon him, or something else equivalent, as it frequently does, the opposite result follows, for the record cannot lie, and it appears that the father as well as the son had been served, which may well have been the case. The record in such a case does not blow hot and cold, as might be supposed; on the contrary, both acts may have been done. On presentation of the return of service upon the son, the court may have declared it no service, and service upon the father may have been subsequently made, and the wrong return may have found its way into the judgment-roll. To hold thus would be consistent with the record, while to hold otherwise would be to contradict the judgment. So in the case of a service by publications—if the affidavit of the printer states that the summons was published one month, and yet the court in its judgment states that it was published three, or that service has been

had upon the defendant, it will be presumed that other proof than that contained in the judgment-roll was made, for not to so presume would be to deny to the record that absolute verity which must be accorded to it." *Quivey* v. *Porter,* 37 Cal. 463, is to the same effect. So far as we are advised the same doctrine prevails in Oregon. So in this case, the judge who made the order may have declared the affidavit presented in the transcript introduced in evidence insufficient and may have required another affidavit to be filed, upon which the order was made, which other affidavit was afterward lost from the files. In support of the recitals in the judgment it must be presumed that this was done, otherwise the recitals would not be true. Upon these principles the judgment must be sustained so far as this objection is concerned.

The proposition that there was another affidavit as above stated is not disproved by the fact that the order for publication of summons refers to but one affidavit. Assuming the verity of the recital in the decree as we must, the fact would be that the order would have been made upon the affidavit that was sufficient to support it, and which was subsequently lost, and not upon the affidavit contained in the record and which was defective. This being so, the order would be accurate in referring to but one affidavit.

With respect to the sufficiency of the summons as published, the requirement of the statute is that "the summons published shall contain the name of the court and the title of the cause, a succinct statement of the relief demanded, the date of the order for service by publication, and the time within which the defendant is required to answer the complaint." The summons as published, according to the record, closes as follows:

"This Summons is published by order of Hon. Loyal B. Stearns, judge of the 4th Judicial District of the State of Oregon.

"BROWNELL & DRESSER,
"Attorneys for Plaintiff.
"9–22: 10–27.

"Dated September 19, 1893."

According to the law of Oregon, it is imperative that the published summons shall comply with the above-quoted statute in order to make a lawful service upon the defendant by publication. (*Odell* v. *Campbell,* 9 Or. 304.) The date of

the order of service by publication does not appear in the summons except as it appears by the words above quoted. It is claimed that the date therein given is not the date of the order for publication, but is the date of the summons itself, and hence that the publication is void. The law of Oregon does not require that the summons should be dated. The original summons appears in another place in the record, and it contains no date. It seems also that the law of Oregon does not require the summons to be issued by the clerk, and that the practice is for it to be signed by the attorneys for the plaintiff. The original summons was so signed, precisely as the summons published as aforesaid was so signed. It is obvious, therefore, that the date given in the publication as above shown was not intended as the date of the summons, but must have been intended for some other purpose. If it had been placed two lines higher in the paper there would have been no doubt that it was intended as the date of the publication order. Inasmuch as the law requires the summons to contain the date of that order, and as the date given was the correct date thereof, and serves no other purpose, and as the summons was not required to be dated, and was not dated, and in view of the presumptions in favor of lawful service arising from the effect of the recital in the decree aforesaid, we are of the opinion that we are bound to presume that this date was the date of the order for publication.

. The respondent does not claim that any other defects exist in the record of the divorce case in 1893, which would defeat the jurisdiction of the court, or render the decree invalid. It must, therefore, be treated as a valid judgment of divorce. The result of this conclusion is that the marriage of Henry F. Pusey to the decedent was valid; that the will previously made by her was revoked by such marriage, and that upon the proofs offered the court below should have denied probate of the will and should have granted the petition for letters of administration.

The orders appealed from are reversed.

Sloss, J., Melvin, J., Victor E. Shaw, J., *pro tem.*, and Angellotti, C. J., concurred.