[Civ. No. 10752. Second Appellate District, Division One.—July 22, 1936.]

EUGENE J. RINALDO, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

L. E. Dadmun for Petitioner.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondents.

HOUSER, P. J.—The facts essential to a determination of the questions presented herein appear to be that some time prior to the date when the instant proceeding was instituted in this court, in pursuance of an order theretofore made by the respondent medical board, the license theretofore possessed by petitioner, Rinaldo, to practice medicine and surgery within the state of California was revoked; that thereafter, and as a result of a hearing in response to a writ of *certiorari* which theretofore had issued from the superior court, the said order made by the medical board was by said court annulled. But, on appeal taken from that judgment, it was ordered reversed;—in effect, it being held on said appeal that the medical board had not exceeded its jurisdiction in the premises. Thereafter, following the transmittal of the *remittitur* by the clerk of the court of appeal to the superior court, before any final judgment in the matter had been entered with reference to the judgment of the superior court in pursuance of the implied direction contained in the decision made by the court of appeal, assumedly in due course of procedure Rinaldo presented to the superior court his motion, in effect, that he be permitted to amend his original petition for a writ of *certiorari;* which motion was by the said superior court denied, for the asserted reason that it was without jurisdiction. Thereupon, within the time provided by law in such matters, Rinaldo filed his proposed bill of exceptions to said last-mentioned

order; and no amendment to said proposed bill of exceptions having been suggested by the respondent board, in due course Rinaldo presented his said bill of exceptions to the said superior court for the settlement thereof. As before, on the sole ground that it was without jurisdiction, the said superior court failed and refused to settle said bill; whereupon, on the application of Rinaldo therefor, this court caused to issue its alternative writ of mandate, by which the said superior court was directed either to settle said bill of exceptions, on or before a specified date, or, on said date to show cause before this court why it had not done so. The said bill of exceptions not having been settled, and the said court having presented herein its demurrer and its answer to Rinaldo's petition for the issuance of the said writ, the ultimate question of law with reference to the right of petitioner to have his proposed bill of exceptions settled by the respondent court is before this court for its decision.

An examination of the opinion rendered by the court of appeal on the appeal from the judgment rendered by the superior court in the *certiorari* proceeding discloses the fact that, in effect, it was determined that as far as concerned the hearing that was had before the respondent medical board on the charges that theretofore had been preferred against Rinaldo, the said board had not exceeded its jurisdiction; and the only order that was made in the premises by the court of appeal was that "the judgment is reversed". In other words, in substance, the decision that was made by the court of appeal was that as to the superior court, on the record as presented to it in the *certiorari* proceeding, it had reached the wrong conclusion; and that instead of annulling the order made by the medical board, the judgment of the superior court should have affirmed the said order.

 In reaching a conclusion as to the correctness of the position assumed by the respondent court, it would seem advisable to lay a foundation with reference to the effect, generally, upon the rights of the interested parties litigant of an unqualified order of a reversal of the judgment.

As far as legislative enactment is concerned, the correct procedure has never been outlined. But in that regard, especially when an ordinary civil action is concerned, as promulgated by judicial pronouncement, the rule appears to be well established that an unqualified reversal of the judg-

ment by an appellate tribunal has the effect of remanding the cause to the said court, either for a new trial or for other appropriate proceedings.

In the case of *Central Savings Bank of Oakland* v. *Lake,* 201 Cal. 438, 443 [257 Pac. 521], it was said that, " . . . It has long been the law of this state that an unqualified reversal remands the cause for a new trial (*Falkner* v. *Hendy,* 107 Cal. 49, 54 [40 Pac. 21, 386]), and places the parties in the trial court in the same position as if the cause had never been tried, with the exception that the opinion of the court on appeal must be followed so far as applicable (*Sharp* v. *Miller,* 66 Cal. 98 [4 Pac. 1065]; *Estate of Pusey,* 177 Cal. 367 [170 Pac. 846])." To the same effect is *Monson* v. *Fischer,* 219 Cal. 290 [26 Pac. (2d) 6].

In *Tupman* v. *Haberkern,* 208 Cal. 256, 268 [280 Pac. 970], the court said: " . . . If the judgment of the reviewing court be a straight order of reversal a new trial must be had upon the going down of the *remittitur.* If the judgment of the reviewing court be an order of reversal with directions to the trial court to enter a judgment in favor of the appellant, the party against whom a judgment for the first time is rendered, namely, the respondent on the appeal, would have the right to move for a new trial or to take an appeal from the judgment so entered, or he might do both. . . . "

But a case in which the particular question was more elaborately considered is that of *Estate of Pusey,* 177 Cal. 367 [170 Pac. 846]. It there appears that on the first trial, the lower court admitted a will to probate, and denied letters of administration to the petitioner. On appeal from such orders, the Supreme Court reversed both orders. The cause was tried again, and the same orders were entered. On a second appeal, the appellants contended that the entire matter was concluded by the judgment of the Supreme Court upon the former appeal. As to this the court said: "His theory upon this point is that where this court reverses a judgment or order without special direction to the court below to proceed further, the case is concluded and the court below is without power to act further, except to carry out the judgment of the Supreme Court by giving the relief demanded by the party who is successful in the appeal. *There is no merit whatever in this contention. The con-*

*trary is thoroughly settled by numerous decisions of the court.* In *Sharp* v. *Miller,* 66 Cal. 98 [4 Pac. 1065], upon a similar question, the court said: 'The reversal of the judgment and order denying the motion for a new trial when the cause was here before, placed the parties in the lower court in the same position as if the case had never been tried, with the exception that the opinion of this court must be followed so far as applicable in the new trial.' When an order has been reversed the effect is that 'it no longer had any vitality or force, and the result was to leave the proceeding where it had stood before that order was made'. (*Estate of Mitchell,* 126 Cal. 248, 250 [58 Pac. 549].) In *Ashton* v. *Heydenfeldt,* 124 Cal. 14 [56 Pac. 624], speaking of a decree which had been reversed, the court said, 'but that decree having been reversed—vacated—on appeal, the matter stood as though no decree had ever been made'. Many cases decide the same proposition. . . . '' (Citing cases.)

To the same effect are *Heidt* v. *Minor,* 113 Cal. 387 [45 Pac. 700]; *Cowdery* v. *London etc. Bank,* 139 Cal. 298 [73 Pac. 196, 96 Am. St. Rep. 115]; *Tomlinson* v. *Kiramidjian,* 133 Cal. App. 418 [24 Pac. (2d) 559].

It therefore would appear to be settled that, ordinarily speaking, an unqualified order by an appellate court of a reversal of a judgment theretofore rendered by an inferior tribunal has no effect upon the rights of the parties litigant other than to remand the cause for further proceedings.

█ In such circumstances, it should inevitably follow, not only that either of the interested parties to the action would have the right to propose amendment to his pleadings; but that if leave to file such amendments were refused, the aggrieved party would also have the right to have an exception to the ruling saved to him by virtue of the provisions of section 647 of the Code of Civil Procedure. It also is clear that since no appeal would lie directly from such an order, but that the right to test its correctness would be by and through the medium of an appeal from the judgment that might be rendered against such an aggrieved party, the only means afforded by our procedure by which the question might properly be brought to the attention of an appellate tribunal would be by a bill of exceptions which, after being settled by the trial court, might be made a part of the

record on appeal from the judgment. Otherwise stated, the rule appears to be that an order denying leave to file an amended pleading is not directly appealable;—the proper mode of review being through appeal from the ensuing final judgment. (*Cornic* v. *Stewart,* 179 Cal. 242 [176 Pac. 164]; *Harper* v. *Hildreth,* 99 Cal. 265 [33 Pac. 1103]; *Hurley* v. *Lake County,* 133 Cal. App. 219 [23 Pac. (2d) 838]; 129 Cal. App. 615 [19 Pac. (2d) 26]; *Merchants Nat. Bank* v. *Clark-Parker Co.,* 97 Cal. App. 757 [276 Pac. 387]; *Campbell* v. *Freeman,* 99 Cal. 546 [34 Pac. 113]; *Los Angeles Housing Corp.* v. *Crowley,* 111 Cal. App. 202 [295 Pac. 371]. See, also, cases in 2 Cal. Jur. 156, and 2 Cal. Jur. Ten-year Supp. 290, to the effect that an order sustaining a demurrer is not appealable, the proper procedure being to appeal from the ensuing judgment.)

 And the rule also appears well established that on the failure or the wrongful refusal of the trial court to settle and thereupon to sign a proposed bill of exceptions, *mandamus* is the proper remedy. (*People* v. *Bitancourt,* 74 Cal. 188, 189 [15 Pac. 744]; *Tibbets* v. *Riverside Banking Co.,* 97 Cal. 258, 259 [32 Pac. 174]; *Whipple* v. *Hopkins,* 119 Cal. 349, 351 [51 Pac. 535]; *Hudson* v. *Hudson,* 129 Cal. 141 [61 Pac. 773]; *Boyer* v. *Burnett,* 134 Cal. 481 [66 Pac. 657]; *Brode* v. *Goslin,* 158 Cal. 699, 701 [112 Pac. 280]; *Mt. Shasta Power Corp.* v. *Superior Court,* 215 Cal. 559 [12 Pac. (2d) 10]; *Potter* v. *Pigg,* 35 Cal. App. 707 [170 Pac. 1066]; *Lester* v. *Superior Court,* 105 Cal. App. 258 [287 Pac. 132]; *Kouts* v. *Superior Court,* 135 Cal. App. 699 [27 Pac. (2d) 788].)

 But when the judgment from which the appeal has been taken involves a decision rendered in a *certiorari* proceeding it is clear that an exception to the foregoing rules should be made. It first may be noted that by the terms of section 1110 of the Code of Civil Procedure it is declared that: ''The provisions of part two of this code relative to new trial and appeals, except in so far as they are inconsistent with the provisions of this title, apply to the proceedings mentioned in this title.'' (Which includes *certiorari* proceedings.) But as an offset to such general provisions, by sections 1090, 1091 and 1092 of the Code of Civil Procedure, as affecting *mandamus* and prohibition only, provision is made for the trial of disputed questions of fact that

may arise in those proceedings. The reasons for omitting therefrom any reference to *certiorari* may develop from a consideration of the scope of such a proceeding.

It has been held that a motion for new trial is proper only to secure a reexamination of issues of fact. (20 Cal. Jur. 20, citing: *Quist* v. *Sandman*, 154 Cal. 748 [99 Pac. 204]; *Estate of Keating*, 162 Cal. 406 [122 Pac. 1079]; *Estate of Richards*, 139 Cal. 72 [72 Pac. 633]; *Foley* v. *Foley*, 120 Cal. 33 [52 Pac. 122, 65 Am. St. Rep. 147]; *Fabretti* v. *Superior Court*, 77 Cal. 305 [19 Pac. 481]; *Younger* v. *Moore*, 8 Cal. App. 237 [96 Pac. 1093].)

In *Gray* v. *Cotton*, 174 Cal. 256 [162 Pac. 1019], in which it was held that a surety on an appeal bond could not move for a new trial of the motion for judgment against him, the court said:

" . . . The court had to decide, and in this case did in fact decide, only the question of law, whether or not, upon the facts appearing in these documents, the plaintiff was entitled to the judgment against the surety. (*Meredith* v. *Santa Clara Min. Assn.*, 60 Cal. 617, 621.)

"The provisions of the code allowing a new trial to be ordered (Code Civ. Proc., secs. 656–660) follow immediately the provisions for the framing of issues, the trial and the decision of civil actions. 'A new trial is a reexamination of an issue of fact in the same court after a trial and decision by a jury, court or referee.' (Sec. 656.) This refers, of course, to the trials and decisions of issues of fact in the civil actions and proceedings embraced in the preceding code provisions, issues raised by ordinary pleadings, and it has no reference to decisions of questions of fact on motions."

In *Abbey Land etc. Co.* v. *County of San Mateo*, 167 Cal. 434 [139 Pac. 1068, Ann. Cas. 1915C, 804, 52 L. R. A. (N. S.) 408], it was held that a motion for new trial could not be entertained where the parties had submitted the cause upon the pleadings, because there was no trial of the cause "upon issues of fact".

As is authoritatively stated in 4 California Jurisprudence at page 1107:

"The province of *certiorari* is to review the record of an inferior court, board or tribunal, and to determine from the record whether such court, board or tribunal has exceeded its jurisdiction. Evidence *dehors* the record, and contra-

dicting it, is never permitted. The reviewing court is bound by the record, which must be taken as true. If the contrary is the fact, it must be corrected by motion or suggestion to the court below. If the court had jurisdiction and the recitals of the judgment or order are sufficient to sustain it, those recitals are conclusive; . . . "

To the same effect, see, also, section 69 of "*Certiorari*" in volume 3 of California Jurisprudence Ten-year Supplement, page 376.

It therefore becomes evident that a hearing in a *certiorari* proceeding is limited to a consideration of such facts as appear in the record that is transmitted from the inferior board or tribunal to the reviewing court, and that no evidence "*dehors*" such record is admissible for any purpose. In other words, no issue of fact is therein triable. The sole purpose of the proceeding is to determine whether, in view of the record as made and presented before the inferior board, it had jurisdiction to render the decision or judgment of which complaint has been made.

In the instant matter, presumably in due course of procedure in the lower court, the writ of *certiorari* was issued, and in consequence thereof the complete record of the proceedings had before the respondent board was properly transmitted to the reviewing court. In other words, the petition for the issuance of the writ had done its full work; it had been completely successful in its objective. No additional facts that in the first instance might have been material or persuasive to the issuance of the writ and the consequent transmittal of the record, were needed to the accomplishment of the purpose of the petition. That work already had been done. No subsequent amendment of the petition, which constituted the pleading of the assertedly aggrieved party, could be of the slightest assistance in that regard. And, as hereinbefore has been indicated, no fact which thus might have been attempted to be pleaded, nor evidence of any fact outside the record of the proceedings had before the respondent board, was admissible before the reviewing court for any purpose. ■ The motion by Rinaldo to amend his petition for the issuance of the writ, which writ already had been issued, had no relevancy or pertinency to the question or issue that was then before the reviewing court. In the premises, the motion was wholly immaterial.

From a legal standpoint, it was not germane to any question of law which the reviewing court was properly called upon to decide, or which it was about to consider. The nature of the proceeding, its province and its scope, imperatively forbade any change or alteration of the facts as they appeared before the respondent board. Those facts, and those alone, were to be the determinative basis for the decision by the reviewing court as to whether the respondent board had exceeded its jurisdiction in the premises.

In the absence of any statute purporting to govern or to control the procedure relative to proceedings that either might or should ensue on the unqualified reversal by an appellate tribunal of a judgment theretofore rendered by an inferior court, neither the application nor the competency of rules of practice that from time to time may be indicated by the reviewing tribunal is open to question. In that regard, such rules, when adopted, at least are as binding as are any that may emanate from legislative sanction. Generally speaking, they are founded upon substantial reason and are well calculated to aid in the administration of justice. And in the consideration of the ultimate instant question, it is readily perceivable how and in what manner the rule by which, in an ordinary civil action, on the unqualified reversal of a judgment and the going down of the *remittitur*, either party ordinarily is privileged to amend his pleadings in the action, may work to the establishment of that which is just between the interested parties. But here no such situation prevails. On the unqualified reversal of the judgment herein, and the receipt by the lower court of the *remittitur* from this court, everything of a factual nature was before the former court which was either necessary or proper for its consideration. A familiar maxim of equity, which is now expressed by statute (sec. 3510, Civ. Code), is that, ''When the reason for a rule ceases, so should the rule itself.'' In the instant matter, no reason has been suggested why, in the circumstances herein, the nature and the scope of the inquiry by means of a writ of *certiorari* considered, the rule of procedure involved in an ordinary civil action should be given application herein. Rather to the contrary, reason indicates that, as related to the special proceeding of *certiorari*, an exception to the rule should be noted.

Although the reason assigned by the lower court for denying the motion to amend the petition, as well as for refusing to settle the proposed bill of exceptions, that were presented by petitioner, may have been subject to criticism, nevertheless, it appearing that no prejudice to his substantial rights in the premises having resulted to petitioner by reason of either of such orders, it follows that he is entitled to no relief on account of such action by the lower court. Moreover, it is a well-established rule that, regardless of the reasons that may have been assigned by an inferior court for the making of an order, an appellate tribunal will not reverse it, if on any sound theory of the law such order be sustainable. (2 Cal. Jur. 809, and authorities there cited; also, p. 494, vol. I, Cal. Jur. Ten-year Supp.)

It is ordered that the demurrer to the petition herein for the writ of mandate be, and it is, sustained, and that the alternative writ heretofore issued herein be, and it is, discharged.

York, J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 20, 1936, and an application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 17, 1936.