[Civ. No. 17121. Second Dist., Div. One. Dec. 28, 1949.]

Estate of WENDELL PHILLIP LUNDELL, Deceased. SADIE McCORMAC LUNDELL et al., Respondents, v. ALBERTA GRACE BENNETT, as Guardian, etc., Appellant.

Sprague & Sparks for Appellant.

Prentiss Moore, Charles M. Hughes and George L. Duke for Respondents.

THE COURT.— ■   The appeal herein is from an order awarding the attorney for the executors extraordinary attorney fees in the sum of $12,000 for services rendered in connection with the settlement of life insurance claims.  Appellant is the guardian of decedent's minor son who is a beneficiary under a trust set up in the will, other beneficiaries thereunder being the widow, nephews and nieces of decedent.

It appears that the decedent was the owner of three policies in the total sum of $150,000, the beneficiaries being three separate corporations of which decedent was the owner and *alter ego*.  The policies in question were taken out about four months before decedent's death.  The life insurance company disputed liability under the policies and demanded an autopsy, ''stating that they had information to indicate that Wendell Lundell took his own life, which under the policies would have required the companies to have returned only the premiums which had been paid, the attestable clause being for two years.''  In addition to  this defense the insurance company alleged fraud in the preparation of the insurance application, which, if true would have resulted in no liability under the policies.

Negotiations for settlement of the disputed claim took place between May and October of 1948, and George L. Duke, attorney for the executors, testified that ''approximately one hundred hours of time was expended on this thing,'' in connection with the working out of a compromise.  The attorney further stated that ''when these negotiations were first inaugurated, that the best offer that was made was perhaps $50,000.00.''  Settlement was finally effected in the total sum of $100,000, and the compromise approved by the court.  There was no litigation instituted, and as stated by the attorney, ''one of the reasons that this was an extremely difficult negotiation was because of the obvious reluctance on the part of the widow, one of the executors . . . to avoid publicity, which would necessarily have followed had litigation been instituted.''

It is appellants' contention: (I), that the attorney ''is not entitled to any fee for extraordinary services in connection with the settlement over and above a just compensation for the preparation of the petition for compromise and the securing of the order thereon''; (II), that ''The trial court abused its discretion in its award of attorney's fees,'' which in appellants' opinion ''should not exceed the sum of $500.00.''

The appellants' argument is that "As a part of the assets of the estate, there existed these claims against the insurance company and by the settlement of these claims the value thereof was determined and the sum of $100,000.00 then became an asset in place of the claims"; that it was the duty of the attorney to assist the executors in collecting the assets, hence the attorney's services herein cannot be deemed extraordinary, except as to the matter of preparing the petition to compromise the claim and securing the order thereon. The fact that the attorney was not required to institute any litigation in order to collect the insurance is given special prominence in appellants' briefs.

"The rule is well established," concede the appellants, "that an award of an attorney's fee will not be reversed on appeal unless it is so excessive as to amount to an abuse of discretion." Appellants then aver that "The magnitude of this sum ($12,000.00) is so plainly and palpably exorbitant as to shock the conscience and require a reversal." It is the respondents' position, that in securing the $100,000 settlement of the $150,000 insurance claim, the estate was thereby enriched and that the fee allowed by the probate court, $12,000 or 12 per cent of the amount recovered, was entirely reasonable and, under the rule above referred to, should not be disturbed by a reviewing court.

The petition for extraordinary fees merely states that the life insurance companies "refused to pay any portion of the insurance . . . and that your petitioners (the executors), together with their attorney, . . . after long negotiations with the said insurance company, compromised the claims . . . and have received as a result of said compromise, the sum of $100,000.00 in cash," which compromise was approved by the court. The petition sought an extraordinary fee of $500 for each of the executors and $15,000 for the attorney's alleged "extraordinary services rendered in connection with the collection of said policies of insurance." The executors' claim for extraordinary fees was denied, but the attorney was granted extraordinary fees in the sum of $12,000, as hereinbefore mentioned.

It will be noted that neither in the above petition, nor in the testimony given by the attorney, is there any detailed statement of exactly what "extraordinary" services were rendered. The attorney testified that "negotiations" were carried on but it is not stated whether such negotiations were with the insurers' attorneys or whether they were merely the

usual negotiations which normally take place between a claimant and a claim agent or claim department. Apparently the executors participated in these negotiations, and for all that appears in the record, may have been well able to bring about the settlement without the aid of any attorney's services, either ordinary or extraordinary. Obviously, the attorney's bare statement that "approximately one hundred hours of time was expended on this thing" is in no manner enlightening nor persuasive where an extraordinary fee of this amount is under consideration.

The nonenlightening condition of the record insofar as showing any basis for the court's order, is further made manifest by the following excerpt. After argument participated in by both attorneys and the probate court, the following occurs: "Mr. Duke. . . . I might say to Your Honor quietly . . . (at this time an off-the-record conversation ensued.) Mr. Sprague: Of course, that did not involve any legal research or anything of that nature. (Further off-the-record conversation.)" The probate court thereupon ordered: "attorney fee $12,000," and the proceedings were terminated.

The above "off-the-record conversations" appear to be relied upon in respondents' brief, and after detailed argument to the effect that the award was a reasonable one, respondent says: "Coupled with all the foregoing, the fact is that the probate judge had before him considerable information in addition to that which appears in the reporter's transcript (Rep. Tr. p. 10, lines 1 and 4), and from such information was well satisfied that $12,000.00 was a reasonable fee and if the appellate court had before it the same information as was made available to the trial judge, respondents submit that there would be no hesitation in at least affirming the award."

As respondents well know, in the American tradition judicial decisions are not predicated on "off-the-record" information privately disclosed to a judge by attorneys or others. If the executors' attorney was entitled to $12,000 for extraordinary services, those interested in the estate are entitled to know the exact nature of those services. In the instant case, as noted in appellant's brief, the attorney will, regardless of any extraordinary fee, "receive $1,000.00 as a portion of his statutory fees resulting from the settlement of this claim," under section 901 of the Probate Code providing that "for all above fifty thousand dollars, (compensation shall be) at the rate of one per cent." Moreover, appellants' brief concedes that the attorney is entitled to an extraordinary

fee of not exceeding $500 for preparing the petition to compromise the claim and securing an order thereon. And, as appellants' brief continues, without some more definite showing as to the "extraordinary" nature of the attorney's services than that presented by the record herein, the $12,000 award is "so great as to shock the conscience at first blush."

Probate courts, like other judicial tribunals, are at all times and under all circumstances the servants of the people. Such courts, in administering the valuable estates of decedents, are charged with the duty of protecting the rights of persons interested in those estates by preventing the improper dissipation of assets. This is no light responsibility. And where one of those interested in the estate is a minor and therefore a ward of the court, the importance of conserving the assets is of paramount importance. The depletion of such an estate by the allowance of extraordinary fees not clearly shown to have been earned cannot be tolerated.

The rule is well established, as stated in *Estate of Hardenberg,* 18 Cal.App.2d 307, 310 [63 P.2d 1200], that the probate court has a large discretion in the allowance of such fees, and that when the court has made its determination in respect thereto, its judgment will not be interfered with on appeal, except only in the face of a plain abuse of discretion.

In the present case the record indicates that on the attorney's statement that "approximately one hundred hours of time was expended on this thing," the probate court awarded an extraordinary fee of $12,000, which would be at the rate of $120 per hour. Stated another way, in addition to the regular statutory fees, the attorney is granted, for services not involving any litigation and for negotiation only, as much as a superior court judge receives for nine months' work. Such a fee, under the meagre record here presented, does, indeed, shock the conscience, and must be deemed an abuse of discretion.

The order appealed from is reversed.

A petition for a rehearing was denied January 26, 1950, and the following opinion was then rendered:

THE COURT.—The petition for rehearing of respondents herein raises the question as to the status of their position by reason of this court's reversal of the order appealed from without directions to the trial court.

The rule appears to be well established that in ordi-

nary civil actions an unqualified reversal of the judgment by an appellate tribunal has the effect of remanding the cause, either for a new trial or for other appropriate proceedings. (*Rinaldo* v. *Superior Court,* 15 Cal.App.2d 585, 588 [59 P.2d 868], and authorities there cited. See, also, *DeHart* v. *Allen,* 26 Cal.2d 829, 833 [161 P.2d 453] ; *Estate of Wear,* 20 Cal.2d 124, 128 [124 P.2d 12].)

Respondents' petition for a hearing by the Supreme Court was denied February 23, 1950. Carter, J., and Schauer, J., voted for a hearing.