234 Cal.App.2d 710 (1965)
Estate of MAX FULCHER, Deceased. L. C. SMITH, as Executor, etc., Plaintiff and Appellant,
v.
ESTHER COLE, as Executrix, etc., Defendant and Respondent.
Civ. No. 10981. 
California Court of Appeals. Third Dist. 
June 1, 1965.
 L. C. Smith and Rawlins Coffman for Plaintiff and Appellant. *712
 Paul B. Baker, Carr, Kennedy & Asbill and Laurence W. Carr for Defendant and Respondent.
 REGAN, J.
 This is an appeal from an order of the Superior Court of the State of California in and for the County of Modoc, allowing extraordinary attorneys' fees and extraordinary executrix' fees. Appellant contends that certain of the amounts granted are in excess of their reasonable value; that certain of the services for which extraordinary allowances were ordered are in fact ordinary estate services, and that the trial court abused its discretion in making its order without taking evidence to support its order.
 Max Fulcher died on May 3, 1960, leaving a will in which he nominated his niece, Esther Cole, to serve as executrix, and who is now acting as such. Anna Fulcher, who was his widow and only heir-at-law, died during the estate proceedings. L. C. Smith is the executor of the estate of the said Anna Fulcher, deceased. By his will Max Fulcher bequeathed one-half of the community property, which he alleged comprised all of the estate, to his widow, Anna Fulcher, and the rest and remainder of the property, less specific bequests, to John Cole, a minor, the son of executrix Esther Cole. The widow of decedent subsequently filed her election renouncing the terms of the will and electing to take her interest in the community property of the estate under the community property laws of the State of California. In due course the requirements of the law with respect to probate of the will were performed, including the filing of the inventory and appraisement. Thereafter, on November 3, 1961, Anna Fulcher filed a petition for an order of the probate court setting aside a probate homestead, to which petition the attorneys for the executrix filed objections. The following transactions also took place in which services were performed by the executrix and her attorneys, to wit, the sale of two parcels of real property, the collection of notes and obligations due the estate, certain litigation concerning the cancellation of a lease, services performed and to be performed with respect to state and federal income, inheritance and estate tax returns, and a service described as investigation, preparation and presentation of heirship petitions.
 On January 10, 1964, Esther Cole, as executrix, and Paul B. Baker and Laurence W. Carr, her attorneys, filed their petition for allowance of extraordinary fees of executrix and extraordinary fees of her attorneys. This petition sets forth in general terms the services rendered by the attorneys and *713 the executrix on behalf of the estate. Anna Fulcher, on January 20, 1964, filed her objections and exceptions to this petition and on this same date the petition for allowance of the extraordinary fees was considered by the court with all interested parties present. The matter was presented by counsel for petitioners and objector by way of argument to the court. There was no oral testimony other than the statements of the respective counsel.
 The trial judge at the commencement of the hearing stated: "I do not feel that I need the help of detailed testimony to fix such amount for extraordinary compensation as the Court would fix if it finds it proper. But I don't want to preclude you, if you wish, from producing that testimony. So with that statement I leave that option with you gentlemen. You see, I just take this position ... if the Court should determine that such extraordinary compensation is to be allowed ... that I can fix it from the file and from my recollection of the many hours we spent in court in this case, you see." At this point the court's attention was directed to certain estate proceedings, namely, a petition to exempt personal property for a probate homestead and also a petition for a probate homestead on estate real property, which had been "litigated" by another judge. The court commented: "That's a matter of which the proceedings will appear in the file." Then followed a general discussion of the law as it related to specific services by an executrix and her attorney, but in no instance was there sworn testimony to supplement the allegations in the petition of extraordinary fees.
 Respondent's petition reads as follows:
 "Petitioners Paul B. Baker and Laurence W. Carr allege that they have performed extraordinary legal services in the administration of the estate as follows:"
 "1. Court appearances in opposition to the petition of the widow for a probate homestead, resulting in a deferment of the order granting such homestead, and ultimate abandonment thereof."
 "2. Initial investigation, study and preparation of Petition to Determine Heirship to bring about determination of complex issues regarding ownership of property between the decedent, the widow and the legatees and distributees, together with the representation of the executrix in opposition to the Petition to Determine Heirship filed by the widow, resulting in hearings in February, 1962, March, 1962, August 1962, September 1962 and July 1963, including pretrial and partial *714 trial of issues set forth in said petitions, appearance on behalf of the executrix in opposition to motion and order to show cause concerning the rendition of an account by executrix, including a hearing on said account in October of 1962."
 "3. Sales of property, including negotiation and completion of sale documents, and preparation and filing of return of sale and order approving sale, preparation and attention to escrow instructions to complete sales on the following properties:"
 "4. Services in connection with the collection of notes and accounts due the estate, in the total amount of $7,300.00 including the collection of the Bide Steward note, in the sum of $1,600.00, and the majority of the Dodson note, in the approximate sum of $5,400.00, and the Fred C. Smith note in the sum of $300.00."
 "5. Services in negotiating and completing the settlement of the issues presented by the Petitions to Determine Heirship including reducing same to an interlocutory decree, and subsequent services in effectuating the provisions of the decree, including necessary research, preparation of schedules, etc. The foregoing included extensive preparation in advance of the hearing, producing settlement of complicated legal problems, and preparation of schedules of proposed exchanges, including possible tax consequences to all parties concerned, and the effect upon the estate's liquidity."
 "6. Investigation, research leading to preparation and filing of a complaint for cancellation of the Cockrell lease, in the action of Cole vs. Cockrell, and resultant cancellation of the lease, preventing the estate being held open for a possible term of 17 years, and being required to lease property at a rental far below its reasonable rental value for a period of 17 years, and as a consequence, because of the successful termination of said litigation, adding immeasurably to the assets of the estate, and, in effect, allowing the executrix a method of terminating the estate through regular channels. That said property concerned with the Cockrell lease was by far the most valuable asset of the estate, and without the cancellation of said lease, the probate of the estate would have been continued for many years at great loss and waste to the estate."
 "7. Extensive office consultation, research, interviewing of witnesses, collection of evidence, and other professional services *715 necessary to the prosecution of the foregoing interests of the estate, including extensive travel by the executrix and the attorneys in connection with same, from Ft. Bidwell to Alturas, from Alturas to Redding, from Redding to Alturas, from Alturas to Reno, and from Alturas to Lakeview."
 "8. Preparation and filing of federal estate and income tax returns, and state income tax returns, research and services in planning administration of the estate, with a view to maximum tax advantage, including numerous conferences with Elwin Freemonth, the Certified Public Accountant representing the executrix of said estate, and the Attorneys and Executrix, of necessity, will perform extensive additional extraordinary services in preparation of required state inheritance tax forms and an amended Federal Estate Tax."
 "9. The attorneys for said executrix estimate that they have reasonably expended approximately four hundred (400) hours of their time on legal matters concerning the estate which were, are and will be of a nature to qualify said services as extraordinary."
 "10. That said executrix has performed many services which were, in their nature, extraordinary, including the following:"
 "Frequent trips to Alturas on estate business, particularly concerning various pending litigation; various conferences and negotiations for rental of Home Ranch, Eastside Property, and Town Property;"
 "Sale of various items of perishable personal property including sale of hay, grain, pasture, machinery and live stock:"
 "Various conferences with U.S. Forrest Service concerning grazing permits and agreement to fence balance of Fandango Property;"
 "Various conferences and travel to Alturas, Lakeview and Reno in connection with the preparation of Federal Estate Tax and Federal and State Income Tax returns:"
 "Numerous trips and conferences in connection with Cockrell Lease and litigation involving same;"
 "Numerous letters and conferences and attempts to collect money due the estate, particularly Dodson and Steward accounts."
 "Wherefore your Petitioners pray that the Court order paid out of the estate the sum of $12,000.00 as extraordinary fees for the attorneys and petitioners, Paul B. Baker and Laurence W. Carr, and further order to be paid out of the estate *716 the sum of $5,000.00 in payment of extraordinary fees rendered by petitioner, Esther Cole, the executrix herein."
 The order of the court allowing extraordinary fees sets forth:
 "1. That each of the catagories of representation for which extraordinary compensation was prayed for in the petition is a proper one under the statute."
 "2. That the executrix is properly acting, pursuant to her duty on behalf of the entire estate of the decedent."
 "3. That the sums hereinafter set forth are reasonable and proper to be allowed the executrix and her attorneys as extraordinary compensation for said services."
 "Now Therefore, It Is Ordered, Adjudged and Decreed:"
 "1. That Esther Cole, executrix, pay to her attorneys, Paul B. Baker and Laurence Carr, out of the funds of said estate, the following sums for the following extraordinary services:"
 [Tabular Material Omitted]
 "Less credit in the sum of $2,000.00 by reason of the advancement thereon reflected in the accounting filed herein on October 1, 1962."
 "It is further ordered that said executrix shall pay herself, out of the funds of said estate, the sum of $3,500.00 for *717 services performed by the executrix relating to the above and as detailed under such item of her petition."
 As previously stated appellant contends that some of the fees allowed were improper in that the services which they compensated were not extraordinary and that all of the allowances were excessive and constitute an abuse of discretion.
 [1] The executrix is allowed all necessary expenses in the care, management and settlement of the estate as well as compensation for her services (Prob. Code, 900, 901) and such further allowances may be made as the court may deem just and reasonable for any extraordinary services as set forth in Probate Code, section 902. [2] The attorneys for the executrix are allowed fees for conducting the ordinary probate proceedings and such further amount as the court may deem just and reasonable for extraordinary services. (Prob. Code, 910.)
 Respondent's petition is completely lacking in particularity sufficient to inform as to the nature of the services performed.
 [3] Phrases such as "court appearances," "initial investigation, study and preparation," "determination of complex issues," "sales of property," "services in connection with the collection of notes and accounts," "services in negotiating and completing the settlement of the issues presented by ... and subsequent services in effectuating," "extensive preparation in advance of the hearing," "extensive office consultation, research, interviewing of witnesses, collection of evidence," "preparation and filing of ... tax returns ... including numerous conferences" lend little towards informing of the extent of the extraordinary services performed, without the taking of evidence to substantiate with particularity the actual services, item by item, for which compensation is sought. [4] The attorneys' bare statement that "they have reasonably expended approximately four hundred (400) hours of their time on legal matters concerning the estate which were, are and will be of a nature to qualify said services as extraordinary," standing alone, and failing to disclose the time consumed in performing each individual item of service is in no manner enlightening nor persuasive and in the case at bench insufficient as the basis for a determination by the trial court of the amounts to be awarded. It is particularly noted that the record is silent as to the services for which the executrix was awarded extra compensation. [5] Nor may the appellant be deemed to have waived his right to object to the awards; in our view public policy should and does forbid such waivers under these circumstances. *718
 [6] The general rule is that the probate court has a large discretion in the allowance of fees for extraordinary services rendered on behalf of the estate. (See Estate of Lundell, 95 Cal.App.2d 352 [212 P.2d 914, 214 P.2d 23].) However, "the burden of proving the necessity for the services is on the representative claiming extraordinary fees for himself and his attorney." (2 Condee, Cal. Probate Practice, 1374, p. 257; Estate of Herbst, 26 Cal.App.2d 249 [79 P.2d 139].) [7] Since no evidence was taken on the value of each particular service nor was each item of service sufficiently identified, the reasonableness of the sums allowed by the court and the full nature of each service alleged to have been rendered must be determined from the declarations in the petition and such inferences as may be drawn from documents in the record of the estate proceeding as reported in the clerk's transcript.
 [8] As stated in Estate of Lundell, supra, at pages 355-356: "If the executors' attorney was entitled to $12,000 for extraordinary services, those interested in the estate are entitled to know the exact nature of those services. ... Probate courts, like other judicial tribunals, are at all times, and under all circumstances, the servants of the people. Such courts, in administering the valuable assets of decedents, are charged with the duty of protecting the rights of persons interested in those estates by preventing the improper dissipation of assets."
 The court's attention has been called to the Estate of Pailhe, 114 Cal.App.2d 658, 662-663 [251 P.2d 76], in which it was claimed that fees fixed similar to the case at bench were unsupported by the evidence. The court said: "A literal reading of the reporter's transcript would indicate that this claim is true, in the sense that no witness was sworn and no testimonial or documentary evidence was formally introduced. While such informality in the proceeding which involves substantial rights is to be deplored, it does not necessarily follow that the resultant order must be reversed." (See also Estate of Wilson, 116 Cal.App.2d 523 [253 P.2d 1011].)
 The Pailhe case is distinguishable from the case before us. In Pailhe the attorneys for the administrator were awarded an extraordinary fee of $1,000 for services rendered in one action brought to set aside a deed. The record of that action was before the court by acquiescence of counsel and the court had sufficient knowledge of the facts to supply the evidentiary basis of the order allowing attorneys' fees. Not so in the case at bench. *719
 [9] In considering the nature and extent of the services the trial court could take judicial notice of the papers on file. The claims, however, were premised to a large extent on representations not reflected by the file. Even, if personally known to the trial judge, these representations were not a proper subject of judicial notice. Appellate review becomes impossible when the trial court acts on the basis of knowledge of which the appellate court is in actual ignorance. (See People v. Bartlett, 199 Cal.App.2d 173, 177 [18 Cal.Rptr. 480]; see also, Witkin, Cal.Evidence (1958) 42, pp. 56-57.) In the interest of justice and in furtherance of sound probate procedure the case must be returned to the court for further proceedings in the light of this opinion.
 The judgment is reversed.
 Pierce, P. J., and Friedman, J., concurred.