[S. F. No. 4915.   Department One.—March 16, 1900.]

In the Matter of the Estate of JAMES McNEIL, Deceased.
    EDWARD WHITE, Appellant, v. FRANK McLAUGH-
    LIN, Administrator, Respondent.

ESTATES OF DECEASED PERSONS—CONTEST FOR LETTERS—NONSUIT UPON
    OPENING STATEMENT—INADMISSIBLE EVIDENCE—ORDER GRANTING
    LETTERS—REVIEW.—Upon appeal from an order granting letters of
    administration to one of two rival applicants, upon the hearing of
    which the appellant was nonsuited upon his opening statement, the
    order will not be reversed merely to allow the appellant to offer evi-
    dence not admissible to control the effect of the case made by the
    respondent, regardless of the question whether the granting of a
    nonsuit upon a contest for letters is proper or admissible practice
    or not.   The case will be treated as if evidence had been offered and
    properly excluded.

ID.—STATE JUDGMENT OF DIVORCE—PENDENCY OF DISMISSED ACTION TO
ANNUL JUDGMENT IN FEDERAL COURT—TIME FOR APPEAL.—Where
the contest for letters involves the validity of a judgment of divorce
obtained by deceased against his former wife in a superior court
in this state, which has never been vacated or annulled, the mere
pendency of time for appeal from a judgment dismissing an action
in equity by such former wife in a federal court to annul the state
judgment cannot impair the force of the state judgment in the
slightest degree.

ID.—GENERAL JURISDICTION OF SUPERIOR COURT IN DIVORCE ACTIONS—
POWER TO DETERMINE SUFFICIENCY OF GROUND.—The superior court
is by the constitution given general jurisdiction over actions for
divorce; and it has power to determine the sufficiency of the facts
alleged as ground for divorce, and if it errs in its decision, the error
can only be corrected in the mode provided by law.

ID.—COLLATERAL ATTACK UPON DIVORCE JUDGMENT NOT VOID UPON ITS
FACE—DEFECTIVE COMPLAINT—ERROR IN EXERCISE OF JURISDICTION.
—A judgment of divorce in the superior court which is not void
upon its face, cannot be collaterally attacked for any error in the
exercise of its jurisdiction in granting the judgment upon a com-
plaint defective in its allegations of residence of the plaintiff, and
of extreme cruelty charged upon information and belief.

ID.—PUBLICATION OF SUMMONS—AFFIDAVIT AND ORDER NOT PART OF
JUDGMENT-ROLL—SHOWING OF CAUSE OF ACTION—CONCLUSIVE PRE-
SUMPTIONS.—Although section 412 of the Code of Civil Procedure
requires it to appear either by an affidavit for publication or by the
verified complaint that a cause of action existed to secure jurisdiction
of the person of the defendant by the publication of summons; yet
if, when the action for divorce was determined, neither the affidavit
nor the order for publication of summons constituted any part of
the judgment-roll, they cannot, upon collateral attack upon the judg-
ment, be examined; but it must be conclusively presumed that the
affidavit for publication stated a cause of action, and that an order
for publication was lawfully made thereon.

ID.—EVIDENCE INADMISSIBLE TO IMPEACH JUDGMENT COLLATERALLY—
NON-RESIDENCE—FRAUD AND CONSPIRACY.—Evidence was inadmis-
sible to impeach the divorce judgment collaterally either by proof
that deceased had not in fact, as alleged in his complaint, been a
resident of the state of California for one year next preceding the
commencement of the action or by proof that the decree was obtained
by fraud and conspiracy on the part of the husband and the woman
whom he subsequently married.

ID.—REMEDIES FOR FRAUD AND CONSPIRACY.—The only remedies for
fraud and conspiracy in obtaining the judgment of divorce would
be either by motion in the original case within the time allowed by
law or by an action in equity assailing the decree and seeking relief
therefrom.

ID.—IMMATERIAL EVIDENCE—NONSUIT OF HUSBAND IN PRIOR SUIT IN ANOTHER STATE—DISTINCT CAUSE OF ACTION.—The fact that the husband had commenced a prior suit in another state upon a distinct cause of action upon which he was nonsuited, is immaterial, and could not create any estoppel in a subsequent suit in this state upon causes of action subsequently arising.

ID.—ESTOPPEL BY FORMER JUDGMENT—PLEADING.—An estoppel by a former judgment cannot be urged unless it is pleaded in the subsequent action.

ID.—SECOND JUDGMENT NOT COLLATERALLY IMPEACHABLE.—The second judgment cannot be collaterally impeached by mere proof of the prior judgment.

ID.—PRIOR ACTION BY WIFE AGAINST HUSBAND FOR LIMITED DIVORCE—PERSONAL SERVICE—FINAL JUDGMENT—CALIFORNIA DECREE NOT SET UP.—The fact that a prior action was commenced by the wife against the husband in Pennsylvania, for a limited divorce from bed and board and for alimony, in which a final decree was obtained, subsequent to the California divorce which was not set up, cannot affect the validity of the judgment granting that divorce, nor avoid its force. The former action pending could only at most be pleaded in abatement of the second action.

ID.—EFFECT OF CALIFORNIA DIVORCE—CHANGE OF STATUS—VALID SECOND MARRIAGE.—The California judgment of divorce, not having been pleaded nor put in issue in the prior action by the wife for a limited divorce, had the effect to change the *status* of the husband to that of an unmarried man, leaving him free to enter into the marriage relation with any one consenting thereto.

ID.—SECOND WIFE ENTITLED TO NOMINATE APPLICANT FOR LETTERS.—The second wife being the only legitimate widow of the deceased was entitled to control the nomination for letters and the order granting letters to her must be affirmed.

APPEAL from an order of the Superior Court of Santa Cruz County granting letters of administration and from an order denying a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Sullivan & Sullivan, Theo. J. Roche, and Cassin & Lucas, for Appellant.

D. M. Delmas, Wm. T. Jeter, Henry C. McPike, and Benj. K. Knight, for Respondent.

ANGELLOTTI, J.—Edward White, a petitioner for letters of administration of the estate of James McNeil, deceased,

appeals from an order granting letters of administration to Frank McLaughlin, and also from an order denying his motion for a new trial. We shall not consider various objections made by respondent to the consideration of these appeals, but will proceed with a discussion on the merits of the appeal from the order appointing McLaughlin administrator.

James McNeil died intestate on April 1, 1906. Margaret McNeil, claiming to be his surviving wife, requested the superior court of Santa Cruz County to appoint Edward White as administrator, and White filed his petition for letters, accompanied by Margaret's written request. Louise R. McNeil, also claiming to be the surviving wife of deceased, requested said court to appoint Frank McLaughlin as administrator, and McLaughlin filed his petition for letters, accompanied by the written request of Louise. The petitions were heard together, the court impaneling a jury to determine the question which of the two claimants was the surviving wife. Petitioner McLaughlin made his proof in support of Louise, and rested. Thereupon petitioner White, through his counsel, made his opening statement as to what he would prove in support of Margaret. Counsel for McLaughlin then moved for a nonsuit as to White, on such opening statement, and this motion, after argument, was granted by the trial court. White was not allowed to offer any evidence. The court then directed the jury to find a verdict in favor of Louise, and such a verdict was rendered. The court then made its order appointing McLaughlin as administrator.

It is essential to an understanding of the legal questions presented that a brief statement should be made of certain material facts shown by the evidence in support of the claim of Louise, none of which was proposed to be controverted by Margaret, according to the opening statement of her counsel. Margaret and the deceased intermarried in the state of Pennsylvania on July 4, 1865, and there lived together as husband and wife until about the year 1890. Some time during the year 1890 deceased came to California, and continued to reside in this state until his death. Margaret never left the state of Pennsylvania. On November 19, 1891, deceased instituted an action in the superior court of the city and county of San Francisco against Margaret for a divorce on the ground of extreme cruelty alleged to have occurred

during the years 1889, 1890, and 1891. The judgment-roll in this action was introduced in evidence, showing service of summons by publication, the entry of Margaret's default on February 24, 1892, for failure to appear and answer, the findings of the court to the effect that all of the allegations of the complaint are true, and a judgment given on February 24, 1892, dissolving the marriage theretofore existing between Margaret and deceased. On March 1, 1902, deceased and Louise were united in marriage in San Rafael, California, by a regularly ordained minister of the gospel, and thenceforth lived together as husband and wife until the death of deceased. The decree of divorce given by the San Francisco superior court has never been vacated or annulled. An attempt was made by Margaret to have it decreed null and void for want of jurisdiction and fraud, by an action in equity instituted in the United States circuit court for the ninth circuit, the amended bill of the complainant therein being filed therein December 6, 1895. A demurrer to this bill was sustained January 11, 1897, with leave to the complainant therein to amend her bill within ten days. No amendment was made, and subsequent to the death of deceased,—viz. on July 5, 1906, judgment was given therein that the action be dismissed. This judgment was received in evidence over the objection of White that, as the time for appeal therefrom had not expired, it was not admissible. Counsel have elaborately argued the question of the effect of this judgment pending the time within which an appeal might be taken, but, in our view of the case, we regard it as entirely immaterial. It was not a judgment purporting to annul or vacate the superior court judgment, and the most that can be said for Margaret in the matter is that she has an action pending looking to the annulment of the superior court judgment. The mere pendency of such an action could not impair the force of such judgment in the slightest degree.

Learned counsel for White earnestly assert that it was gross error for the trial court to refuse to allow them to introduce evidence in support of Margaret's claim, in view of their statement that they proposed to prove "that Louise R. McNeil is not the surviving wife of James McNeil deceased, but that Margaret McNeil is the widow, and entitled to succeed to the widow's share of the decedent's estate." If this were all, un-

doubtedly their claim would be well based. But it is apparent from the record that this was simply a statement by counsel of a legal conclusion upon the specific facts which they expected to prove and which they detailed at great length. After the motion for a nonsuit had been made, counsel amplified the statement previously made, and there was no intimation in the court below and there has been no intimation in any of the briefs that counsel had any evidence to offer other than such evidence as was detailed in the statements made before the trial court. Regardless of the question whether it is a proper or commendable practice to grant a nonsuit on the opening statement of counsel, or whether there is any such thing known to our law as a motion for nonsuit on the hearing of rival applications for letters of administration, it is apparent that the order appealed from should not be reversed merely for the purpose of allowing the appellant to offer evidence that would not be admissible to impair the effect of the case made by the other applicant. The case is practically simply one where certain evidence has been offered and excluded by the trial court.

We are thus brought to a consideration of the matters which White sought to prove in support of Margaret's claim that she was the surviving wife of deceased. There was and is no pretense that she again became his wife after the judgment of divorce given on February 24, 1892. Her claim is based entirely on the marriage of July 4, 1865, which she contends has never been dissolved. If the divorce judgment is to be given full effect as a valid judgment between the parties thereto, it is apparent that her contention must fail, for by its terms the marriage relation theretofore existing between her and deceased was thereby terminated. It was therefore essential for her, in order to prevail, to show that this judgment was for some reason void or inapplicable. Unless she could do this, the judgment must necessarily stand as an insuperable obstacle to the establishment by her of any claim that she continued to be the wife of deceased.

Any attack in this proceeding upon the divorce judgment is of course essentially a collateral attack. It is thoroughly settled in this state that a judgment of one of our superior courts cannot be held void upon collateral attack unless it is void upon its face, i. e., unless its invalidity is apparent

upon an inspection of the judgment-roll. If it is valid on its face, extrinsic evidence is not admissible on a collateral attack for the purpose of impeaching it.

In the case at bar it was claimed the divorce judgment was void upon its face, but it was not necessary for appellant to introduce any evidence in support of this claim, as it was stated he proposed to do. The judgment-roll in that action had been introduced in evidence by respondent, and its correctness was not questioned. It was not proposed to show that the papers so introduced in evidence by respondent were not true and full copies of the original papers in the action attached together by the clerk of the superior court as the judgment-roll therein. Whether or not the judgment was void on its face was to be determined solely upon an inspection of such of those papers as, under the law, constituted the judgment-roll in the action.

The contention that the judgment is void on its face is based on the claim that the complaint for divorce was fatally defective in two particulars. At the time the action was brought, section 128 of the Civil Code provided, as it does now, that "a divorce must not be granted unless the plaintiff has been a resident of the state for one year, and of the county in which the action is brought three months next preceding the commencement of the action," and the allegations of the complaint as to plaintiff's residence were that he is and has been a resident of the state for "more than one year preceding the commencement of the action," and of the city and county of San Francisco "for more than three months preceding the commencement of the action," omitting the word "next." The cruelty alleged consisted of abusive and slanderous statements habitually made by the defendant of and concerning plaintiff to various persons, occasioning him grievous mental suffering, and the making of these statements was alleged solely on information and belief.

If we assume that there is force in either of these objections, it is apparent that they go solely to the question whether or not the complaint sufficiently stated facts warranting a divorce, and that the alleged defects in no degree affected the jurisdiction of the court to hear and determine the action, provided the court obtained jurisdiction of the person of the defendant. This is, of course, obvious as to any defect in the

allegations of acts of cruelty, and, we think, equally clear as to any defects in allegations of residence. The superior court is by the constitution given general jurisdiction of actions for divorce. Under this grant, when a complaint is filed asking for a divorce the court at once acquires jurisdiction of the subject-matter of the action regardless of whether or not the complaint states facts warranting the granting of a divorce, and when it has obtained jurisdiction of the person of the defendant, it has the power to hear and determine the cause. In so hearing and determining it is proceeding in the exercise of its lawful jurisdiction, which involves the power to determine the sufficiency of the facts alleged as a ground for divorce. If it errs in its conclusion in this matter it is simply error in the exercise of its jurisdiction, which can be corrected only in the way provided by law for a review of the action of the trial court, and which cannot be reached on collateral attack or even reviewed in any other action. In *Estate of James*, 99 Cal 374, [37 Am. St. Rep. 60, 33 Pac. 1122], which, like this, was a contest for letters of administration involving the question which of two women was the surviving wife of deceased, one relying on a decree of divorce purporting to dissolve a former marriage between the deceased and the other woman, this court said: "The attack here made upon the judgment in *James* v. *James* is collateral, and it is well settled that the judgment of a court having general jurisdiction of the subject-matter involved in the judgment cannot be successfully attacked in a collateral proceeding, because of an imperfect or defective complaint in the action in which it was rendered. If the facts stated in the complaint are not sufficient to entitle the plaintiff to the relief demanded therein and awarded by the judgment, the action of the court in deciding otherwise and rendering its judgment in accordance with the prayer of the complaint can be nothing more than error (citing cases). The complaint in *James* v. *James* was sufficient to inform the court and the defendant therein of the relief which the plaintiff demanded and of the facts upon which he based his right to the relief sought, and this was all that was necessary in the way of a statement of facts to give the court jurisdiction of the subject-matter of the action." (See, also, *LeMesnager* v. *Variel*, 144 Cal. 463, [103 Am. St. Rep. 91, 77 Pac. 988].) Section 128 of the Civil Code, relative

to residence of the plaintiff, does not impose any limitation on the *jurisdiction* of the superior court in the matter of divorces, but simply prescribes certain facts as essential to the making out of a case warranting a divorce, and allegations in regard to residence stand upon the same footing as any other allegation of facts showing the right to a divorce. If they are defective in any respect and the court nevertheless holds them to be sufficient, we have nothing more than error in the exercise of jurisdiction.

It is earnestly claimed by learned counsel for appellant that by reason of these alleged defects in the complaint, the superior court failed to acquire jurisdiction of the *person* of the defendant in the divorce case and that the judgment is therefore void. The point in this connection is that to authorize a service by publication of summons, which was the only service attempted in that action, it must appear either by the affidavit made on the application for an order of publication or by the verified complaint on file, "that a cause of action exists against the defendant in respect to whom the service is to be made," (Code Civ. Proc., section 412), and that unless a cause of action is shown by such affidavit or by the verified complaint on file, the order for publication and publication are void, and the court, therefore, without jurisdiction over the person of the party so attempted to be served. It is asserted that the affidavit for publication in the divorce action also wholly failed to show a cause of action. The authorities doubtless sustain the position taken by appellant in this regard, if the defect alleged is apparent on an inspection of the judgment-roll. But the difficulty with his claim is that such defect is not shown by the judgment-roll. At the time of the divorce action, neither the affidavit for publication of summons nor the order for publication constituted any part of the judgment-roll under our law, section 670 of the Code of Civil Procedure, so far as material, then reading as follows: "Immediately after entering the judgment, the clerk must attach together and file the following papers, which constitute the judgment-roll: 1. In case the complaint be not answered by any defendant, the summons, with the affidavit or proof of service, and the complaint, with a memorandum indorsed thereon, that the default of the defendant in not answering was entered, and a copy of the judgment."

It was not until 1895 that the section was amended by making such affidavit and order part of the judgment-roll. (Stats. 1895, p. 46; *People* v. *Davis,* 143 Cal. 673, 677, [77 Pac. 651]; *People* v. *Temple,* 103 Cal. 447, 453, [37 Pac. 414]; *Hahn* v. *Kelly,* 34 Cal. 391, 404, [94 Am. Dec. 742].) The cases just cited all require us to hold that the affidavit for publication and the order therefor, not being a part of the judgment-roll under the law, cannot on collateral attack be examined for the purpose of ascertaining whether they were sufficient to authorize service by publication of summons, even though improperly inserted in the judgment-roll or contained in the bill of exceptions. They must be conclusively presumed to have been all that the law required to authorize such service. In *Hahn* v. *Kelly,* 34 Cal. 391, 404, [94 Am. Dec. 742], it was said that two prior cases, one of which was *Forbes* v. *Hyde,* 31 Cal. 342, relied on by appellant, was improperly decided so far as this point was concerned, on the assumption that the affidavit was a proper part of the judgment-roll. The effect of what we have said is, as applied to this case, that if the divorce complaint failed to state a cause of action, it must be conclusively presumed here that the affidavit for publication did state a cause of action, and that an order for publication was lawfully made thereon.

No other defect apparent on an inspection of the judgment-roll is suggested. It must, therefore, be held that the divorce judgment is not void on its face.

Other matters as to which it was proposed by appellant to introduce evidence, were the following:—

1. It was proposed by appellant to show that deceased had not been as a matter of fact a resident of the state of California for one year next preceding the commencement of the divorce action. Such evidence was not admissible to impeach the divorce judgment on this collateral attack. The question whether he had been such a resident, and, consequently, was entitled to a divorce if he showed good ground otherwise therefor, was one to be determined solely in the divorce action itself, and the ruling of the court thereon cannot even be reviewed in any other action (*LeMesnager* v. *Variel,* 144 Cal. 463, [103 Am. St. Rep. 91, 77 Pac. 988]), much less reviewed on such an attack as we have here. The divorce judgment is conclusive on this question.

2. It was proposed by appellant to show that the divorce judgment was obtained by fraud and conspiracy on the part of deceased and Louise, whom he subsequently married. It is elementary that no such showing against a judgment is allowable on a collateral attack of this character, and that the only remedy of the aggrieved party in such a case is by motion in the original case within such time as may be allowed by law, or by an action in equity assailing the decree and seeking relief therefrom.

3. It was proposed to show that in the year 1888 deceased commenced an action in the state of Pennsylvania against Margaret to obtain an absolute divorce from her, and that in this action he was nonsuited. The proposed evidence would have been immaterial for at least two reasons. To avail a defendant of the benefit of estoppel by former judgment, it must be pleaded in the subsequent action, and in no case can the second judgment be collaterally impeached by a showing thereof. There was no estoppel by former judgment, for the matter alleged as constituting ground for divorce in the former action commenced in 1888 could not be the same as the matters alleged in the California action, which were as to alleged acts of cruelty committed in the years 1889, 1890, and 1891.

4. It was proposed to show substantially as follows: In March, 1890, Margaret commenced in the proper Pennsylvania court, an action to obtain a decree of divorce from bed and board on the ground of adultery and desertion. Under the laws of Pennsylvania, such a decree would operate simply to separate the parties, without terminating the marriage. Deceased was personally served with process therein and contested the action. During its pendency, he commenced the California action and obtained the judgment therein. Although he subsequently contested the Pennsylvania action by counsel, he never presented as a defense thereto the California judgment. In June, 1893, Margaret having withdrawn her charge of adultery, judgment was given by the Pennsylvania court granting Margaret a divorce from bed and board on the ground of desertion and awarding her alimony. This judgment was affirmed on appeal. We are unable to perceive any ground upon which this evidence would have been effectual to avoid the force of the California judgment. We have

not been able to find any authority for the proposition that a judgment valid on its face may be collaterally impeached by proof that there was a former action pending at the time of the institution of the action in which it was rendered. That is ordinarily understood to be a matter which must be pleaded in abatement in the second action. The point made by learned counsel in regard to this matter is that the validity of the California judgment was presumptively involved in the Pennsylvania action, and that the Pennsylvania court must be held to have determined in an action where it had power to so determine as betwen the parties that the California judgment was void, and that the parties were still husband and wife. In his statement in the lower court he expressly declared that deceased did not in any way allege or make any claim under the California judgment in the Pennsylvania court. So far as the point made by counsel in this action is concerned, the decision in *Estate of James,* 99 Cal. 374, 379, [37 Am. St. Rep. 60, 33 Pac. 1122], is in point. James had procured a divorce from his first wife in the state of Missouri. He subsequently returned to New York, and his first wife there brought an action against him for a divorce from bed and board and for alimony. She obtained the decree sought. This judgment was relied on by the first wife as establishing that James and she were husband and wife at the time the same was given, and as avoiding the force of the Missouri decree. This court said, through Mr. Justice De Haven: "The validity of the decree of divorce obtained by James in the state of Missouri was not directly put in issue in that action, and there is nothing in the record to indicate that it was even brought to the attention of the court of New York rendering this latter judgment. We do not think that the judgment just referred to, although it is necessarily based upon the fact that the parties thereto were then at its date husband and wife, is a bar to the right of the respondent to assert in this proceeding the binding force of the former decree rendered in the state of Missouri in the case of *James* v. *James,* and the lawfulness of her subsequent marriage to the deceased in this state. The decree of divorce obtained by the deceased in Missouri was valid, and established the *status* of the deceased as an unmarried man, leaving him free to again enter into the marriage relation with any other person

consenting thereto.    His failure to plead the judgment of divorce in bar of the subsequent action brought by the petitioner for the separation from bed and board, and the judgment of the court in New York decreeing such separation, did not have the effect to change the *status* of deceased from that which was given him by the decree of divorce rendered in the state of Missouri.    After that decree, and until reversed or vacated by some appropriate proceeding, his *status* as a single man could not be changed without his consent."    This fully answers the point made by appellant.

It is unnecessary to notice here other matters which it was proposed to prove.    Although some of them were matters which, if proved, would entitle Margaret to relief against the divorce decree in an equitable action, they were clearly matters which could not be shown on this collateral attack on such decree.

It follows from what has been said that no prejudicial error was committed by the trial court, and that upon the admitted facts the trial court was bound to hold that Louise was the surviving wife of deceased and that her nominee was entitled to letters of administration.

The orders appealed from are affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.