ATANASIA MIRANDA, ETC., Plaintiff and Appellee-Appellant, *v.* RAMÓN CACHO VEGA, Defendant and Appellant-Appellee.

No. 9305. Argued June 5, 1946.—Decided July 26, 1946.

*Félix Ochoteco, Jr.,* and *Luis E. Dubón* for appellant-appellee. *E. Pérez Casalduc* for appellee-appellant.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

In the complaint filed by Atanasia Miranda, "as mother with *patria potestas* over her minor daughter Carmen Lydia Miranda," it was alleged that Atanasia and Ramón Cacho Vega, the defendant herein, lived in open concubinage and that out of that union there was born, on February 17, 1929, a child named Carmen Lydia, and that at that time both the plaintiff and the defendant were single and could have contracted marriage with each other. Prayer was made "for a judgment declaring the plaintiff an acknowledged natural daughter of the defendant, and for any other proper relief."

The defendant answered and denied all the averments of the complaint. The case went to trial and the lower court rendered judgment declaring (*a*) that the paternity of the defendant with respect to the plaintiff Carmen Lydia Miranda had been proven; and (*b*) that, although the defendant is the father of the plaintiff minor, the latter "has not the status of a natural daughter but that of an illegitimate child" only entitled to claim support from her father, in accordance with §§ 128 and 143 of the Civil Code, 1930 ed. Both parties have appealed.

We will take up first the appeal of the plaintiff.

■ The appellant urges that the lower court erred in holding that it was not proper to declare the minor an acknowledged natural daughter because her mother, at the time of the conception of the child, could not have contracted marriage with the defendant, as such conception took place before the expiration of the period of 301 days fixed by § 70 of the Civil Code, 1930 ed., during which a divorced woman can not remarry.

The facts shown by the evidence are as follows: Atanasia Miranda contracted marriage with Francisco Galán on June 18, 1923. On November 2, 1926, Atanasia filed an action for divorce and alleged that on July 26, 1923, Galán had deserted her and transferred his domicile to New York, where he resided at the time of the filing of the complaint. The defendant was summoned by publication and upon his default in answering the complaint, the District Court of Arecibo, on December 16, 1927, decreed the divorce sought.

At the trial of the instant case, Atanasia Miranda testified that she decided to get a divorce when the defendant herein began to court her; that her husband had been in New York since 1923; that she obtained her divorce and then cohabited with the defendant since the beginning of 1928; that she felt the first symptoms of pregnancy during the first month of such cohabitation; that the child was born in 1929; that ever since her husband had left she had had no sexual relation with him or with any other man until she went to live with the defendant after she was divorced. The birth certificate produced by the plaintiff showed that the child was born February 16, 1929.

The evidence adduced to establish or refute the alleged paternity of the defendant is conflicting. The lower court decided the conflict against the defendant; and since the evidence of the plaintiff, believed by the trial court, is sufficient to support the finding that the child is a daughter of the defendant, we are not authorized to alter said finding.

■■ The essential question to be decided in the instant case is whether, under the proven facts, the lower court erred in declaring that the child had not the status of a natural child.

Section 125 of the Civil Code provides that "Natural children are those born out of wedlock, from parents who, at *the moment when such children were conceived or were born, could have* intermarried with or without dispensation." (Italics ours.) Could Atanasia Miranda and Ramón Cacho have married, with or without dispensation, at the time of the conception of Carmen Lydia at the beginning of 1928, that is, within the 301 days following the dissolution of the marriage of Atanasia Miranda and Francisco Galán? The question is definitely answered by § 70 of the Civil Code, which in its pertinent part provides as follows:

"The following persons are incapacitated to contract marriage:
"* * * * * * *

"6.—A widow during a period of three hundred and one days after the death of her husband; or before a child is born, if she is pregnant at the time of such death; and a woman whose marriage has been declared null or has been dissolved, during a like period of time commencing from the date of such nullity or dissolution."

Since Atanasia Miranda at the time of the conception of her daughter was incapacitated to remarry, she and Ramón Cacho Vega could not have married at that time, with or without dispensation and, therefore, their child could not have the status of a natural child.[1] It is argued that since the child was born on February 17, 1929, that is, fourteen months after the divorce had been decreed, the birth took place after the expiration of the 301 days following the dissolution of the marriage, and that if defendant and Atanasia Miranda had contracted marriage before the birth of Carmen Lydia, the marriage would have been validated in accordance with the doctrine laid down in *Cintrón v. Román,* 36 P.R.R. 437.

---

[1] This legal provision has been changed by Act No. 229 of May 12, 1942, as amended by Act No. 243 of May 12, 1945.

The circumstance that on the assumption of a marriage between Ramón Cacho and Atanasia Miranda and the birth of the child, in wedlock, after the 301 days following the divorce, such marriage would have been voidable, does not imply that the parties had capacity to contract marriage. Contracts of minors over eighteen years of age are voidable; yet no one could maintain that because of that fact minors have legal capacity to contract.

We have already seen that the basis for determining the status of a natural child is the circumstance that at the time of the conception of the child out of wedlock, its parents could have married, with or without dispensation. The fact that if the parents had married before the birth of the child, the latter would have the status of a legitimate child, has no bearing whatever upon the matter in controversy. This is shown by the following illustration: X, a married man, has access to Z, a single woman, and from that union a child is born. After the child was conceived, but before it was born, X became a widower and married Z. There is no doubt that the child is a legitimate child, in accordance with § 113 of the Civil Code which declares as legitimate children those born 180 days after the marriage has been celebrated or within 300 days next following its dissolution; or in accordance with § 114, which provides that "a child is also legitimate if born within 180 days after the celebration of the marriage, if the husband should not contest legitimacy." However, if no marriage between X and Z takes place, as happened in the instant case, no one would think of maintaining that the child of X and Z—although it was conceived when its father was married—is a natural child because if X and Z had married before it was born, the child would have been a legitimate one.

The tests to determine the legitimacy, the legitimation, and the status of a natural child are different. For the legitimacy it suffices that the child should have been born after the marriage was contracted, although at the time of

the conception the parents were incapacitated to intermarry. Sections 113 and 114 of the Civil Code. It is an indispensable requisite for the legitimation by a subsequent marriage—which contemplates that the child was born before its celebration—that the child should have the status of a natural child. Sections 119 and 120 of the Civil Code. And, lastly, that in order that the child may have the status of a natural child, it is necessary that at the time of its conception its parents could have contracted marriage with or without dispensation.

It might also be argued that since the evidence shows that when the divorce was decreed, Francisco Galán, the husband of Atanasia Miranda, was residing in New York, since July 1923, the girl could not be Galán's daughter, and there being no possibility of confusion regarding the parternity of the child, Atanasia Miranda was not incapacitated to contract marriage with Ramón Cacho when the child was conceived. The contention could, perhaps, be made if the husband Francisco Galán had sought to contest the legitimacy of the child, under § 113 of the Civil Code. But the Civil Code does not establish that circumstances as an exception to subdivision 6 of § 70, nor have we found any commentator who upholds that proposition.

█ Since the court *a quo* held that the child was a daughter of the defendant, but not a natural child, and since she was born out of wedlock, it must necessarily be concluded that she is an illegitimate child and, as such, entitled to maintenance and support. It is true that the defendant did not request to be declared an illegitimate child, but as from the pleadings and the proof, it appears she was such, the lower court did not err in granting to the plaintiff the relief to which she was entitled. Rule 54(c), Rules of Civil Procedure.

Let us now consider the appeal taken by the defendant.

█ In the first assignment it is alleged that the lower court erred in not dismissing the complaint, as it failed to allege sufficient facts to enable the court to grant to the

plaintiff the relief sought. The defendant-appellant maintains that, since Atanasia Miranda had not brought the action in representation of her child, as natural mother of the minor, who is the real party in interest, the action can not prosper. He cites in support of his contention the decision of this court in *Olivo* v. *Arribí*, 38 P.R.R. 643, 644, and 645.

It is easy to distinguish the case cited from the case at bar. The action in that case was brought in the name of Angela A. Olivo, as plaintiff. The complaint in the case before us has been filed by "Atanasia Miranda, as mother with *patria potestas* over her minor child Carmen Lydia Miranda, plaintiff." The prayer made "for a judgment declaring the plaintiff an acknowledged natural daughter of the defendant," is a clear indication that the plaintiff is the daughter, represented by her natural mother Atanasia Miranda. It would be unreasonable to interpret the prayer of the complaint in the sense that Atanasia, the mother, requests that she be declared a natural child of her paramour. The court did not err in holding the complaint sufficient.

It is alleged in the second assignment of error that the lower court erred in not dismissing the complaint once it was shown that the plaintiff minor could not allege with success her status as a natural child.

We have already held that the court *a quo* did not err in declaring that the plaintiff had not the status of an acknowledged natural daughter of the defendant. The defendant-appellant has unsuccessfully tried to convince us that the judgment appealed from is erroneous in so far as it declares the plaintiff to be an illegitimate child of the defendant. His whole argument is based on a collateral attack upon the judgment of divorce rendered on December 16, 1927, whereby he seeks to show that both at the time of the conception and of the birth of the plaintiff minor, her mother Atanasia Miranda was still married to Francisco Galán, the child having, therefore, the presumption of being the legitimate child of Francisco Galán and Atanasia Miranda, and that such

528

presumption has not been overcome by the evidence as required by law. The collateral attack upon the judgment of divorce was not made in the lower court, the question being raised for the first time in the brief of the defendant-appellant.

The only evidence which the plaintiff was bound to present in order to establish the fact that at the time of her birth her mother was not married, was the judgment of divorce. That judgment has in its favor the presumption of being valid and of having been rendered by a court with jurisdiction over the subject matter and over the parties. We have examined it and we have not found therein anything which could affect its validity.

The rule established by the California decisions is that a judgment is void upon its face only when that fact is made aparent by an inspection of the judgment roll—*People* v. *Thomas,* 101 Cal. 571. When the service of summons has been made through the publication of edicts, the affidavit and the order for publication of the edicts constitute no part of the judgment roll and can not be taken into consideration. *People ex rel. Schwartz* v. *Temple,* 103 Cal. 447; *Canadian and American Mortgage and Trust Co.* v. *Clarita Land and Investment Co.,* 140 Cal. 672; *People* v. *Davis,* 143 Cal. 673; 15 Cal. Jur. 45.

Since no ground or reason to justify a declaration of nullity appears from either the face of the decree or from the judgment roll, and since the defendant-appellant has failed to introduce any evidence whatsoever to support his allegation that certain requisites for summons by publication were not complied with, we are bound to hold that the presumption of validity which every judgment has in its favor has not been overcome. See *Estate of James McNeil,* 155 Cal. 333; *Crouch* v. *Miller,* 169 Cal. 341; *Hamblin* v. *Supreme Court,* 195 Cal. 364.

For the reasons stated the appeals taken should be denied. The judgment appealed from will be affirmed.

DISSENTING OPINION OF MR. JUSTICE CORDOVA IN WHICH
MR. JUSTICE SNYDER CONCURS.

I dissent from that part of the judgment and opinion of the court which holds that the plaintiff is not a natural child of the defendant.

Plaintiff was conceived within the period of 301 days after her mother was divorced. Could her parents have married at that time? Section 70 of the Civil Code, literally construed, answers that question in the negative. It provides that a widow or a divorcee has no capacity to marry during the period of 301 days from the death of her husband or the rendition of the divorce decree. If we follow the letter of § 70, plaintiff's mother could not remarry at the time her daughter was conceived. She then had no capacity to marry.

But § 70 should not be literally construed. All the justices of this court concur in that its scope was interpreted correctly in *Cintrón* v. *Román*, 36 P.R.R. 437, where it was held that the marriage contracted by a divorcee two months after the rendition of the decree of divorce was not void, but voidable, and that it could not be annulled once the period of 301 days from the date of the divorce decree had elapsed. We then stated:

". . . It ould be a violation of the spirit of section 178 [1] if it were held that the prohibition imposed on a widow or on a woman who has been divorced . . . is an essential requisite to contract marriage ... "

The holding in the case of *Cintrón* v. *Román, supra,* is, therefore, that a widow or a divorcee *can* remarry within the period of 301 days after becoming a widow or having obtained a decree of divorce, that she has *capacity* to contract marriage. This being so, the plaintiff is a natural child of the defendant, since her parents could have married at the time of her conception.

---

[1] Civil Code of 1902 equivalent to § 70, Civil Code, 1930 ed.

The case at bar does not essentially differ from the case of a child of unmarried parents, the mother being a minor under sixteen years of age. Section 70 of the Code provides that a female under sixteen years of age lacks capacity to contract marriage. But it adds (as the case of *Cintrón* v. *Román, supra,* adds something similar as to the "incapacity" of a widow or a divorcee) that the marriage shall be validated if the woman conceives before the age of legal puberty, or before an action of nullity is brought. Is the child of a single woman under sixteen years of age, the father being also single, a natural child? Undoubtedly, to my mind. The "incapacity" of the mother does not exclude the possibility of her contracting marriage at the time of conception. She may marry, and if she does, the marriage is validated at the time she conceives. The same thing happens with a widow or a divorcee. The "incapacity" during the term of 301 days does not exclude the possibility of her contracting marriage. If she contracts marriage and does not give birth until after the period of 301 has expired, there is no possibility of confusion regarding paternity, and the marriage is valid. A widow or a divorcee should not marry prior to the expiration of the period of 301 days and neither should a minor under sixteen years of age do so. But she may do it, and if she does, the marriage may result perfectly valid *ab initio*.

I conclude that at the time the plaintiff was conceived, her parents could have married and that therefore she is entitled to be declared a natural child, and not an illegimate child, of the defendant.