[Civ. No. 21399.   Second Dist., Div. Three.   Dec. 7, 1956.]

VICTOR GLASBAND, Appellant, v. JOHN HUSSONG, Respondent.

Samuel Maidman for Appellant.

Chandler, Wright, Tyler & Ward; Walker, Wright, Tyler & Ward and W. A. Caldecott for Respondent.

WOOD (Parker), J.—Plaintiff sought damages for breach of an oral contract.   In a nonjury trial, judgment was for defendant.   Plaintiff appeals.

Plaintiff is a citizen of the United States, residing in Los Angeles.   Defendant is a citizen of Mexico, residing in Ensenada.

The complaint, as amended at the beginning of the trial, alleged that: On February 16, 1954, plaintiff entered into

an express contract with defendant in Los Angeles for the purchase of a 49 per cent interest in three fishing boats which were registered at the Port of Ensenada, Mexico, in the name of defendant as owner. The names of the boats were Beatriz, LaPaz, and D-D. Plaintiff agreed to pay $8,330 for said interest therein. About February 27, 1954, plaintiff paid $500 to defendant on account of said agreement, and agreed to pay the balance at such time as defendant would designate. About April 2, 1954, they modified the agreement to include in the transaction an additional boat named Frieda III, and plaintiff agreed to purchase a 49 per cent interest in the four boats for $10,780. The modification was made in Los Angeles. About March 12, 1954, plaintiff paid to defendant an additional $2,000 on account. About February 27, 1954, they agreed that plaintiff would defray the cost of repairing the boats, and that such payment would be credited upon the purchase price of plaintiff's said interest, and after the boats had been repaired and plaintiff had been credited with the sums expended by him, plaintiff would then pay to defendant the balance remaining on the purchase price of said 49 per cent interest. Plaintiff (erroneously written ''defendant'') expended $2,799 for repairing the boats, and after the boats had been repaired plaintiff offered to pay $5,481 to defendant to complete the payment of said $10,780 for said 49 per cent interest in the four boats. Defendant refused to accept the offer, and about March 23, 1954, notified plaintiff that he would not transfer said interest to plaintiff. At the time plaintiff entered into said agreement to purchase said interest, defendant represented to plaintiff that for some years he had used the boats in a pleasure fishing business at Ensenada and said business had made a net profit of $15,000 a year, and that after repairing the boats it was expected the profits in said business would be at least $15,000 a year. Defendant further represented that the boats were of the reasonable value of $30,000, and he was offering a 49 per cent interest for $10,780 because defendant needed the money from the sale to repair the boats and to finance other business ventures. Defendant agreed to secure the approval of the Mexican government for the transfer of said interest to plaintiff. Plaintiff has performed all conditions in said agreement on his part to be performed. Plaintiff, in expectation that defendant would perform the agreement, expended not less than $2,000 for trips from Los Angeles to Ensenada, for telephone calls to defendant,

and for general services rendered by plaintiff to defendant. The prayer of the complaint was for damages, as follows: $2,500 paid to defendant; $2,799 paid for repairing the boats; $3,920 the difference between the sale price and the actual value of the boats; $7,350 loss of 49 per cent of profits for one year; and $2,000 paid for general expenses.

The answer of defendant was to the effect that he admitted that he was the owner of the boats and the boats were registered. at the Port of Ensenada; and he denied generally and specifically the other allegations of the complaint. Seven separate defenses were:

(2) Legal incapacity of plaintiff because the law of Mexico provided that persons not citizens of Mexico were required to have a "Visitor For Business Permit" from the government of Mexico in order to invest funds in Mexico, and that plaintiff did not have such a permit.

(3) Purported contract is invalid and unlawful because it purports to allow plaintiff, an American citizen, to invest funds in Mexico without securing a business permit from Mexico.

(4) Contract is invalid because it is not acknowledged before a notary public and recorded in Mexico, as provided by Mexican law.

(5) The only contract which defendant entered into with plaintiff, regarding the boats, was that on said February 27, in Ensenada, defendant orally agreed with plaintiff and Tomas Moreno, a Mexican citizen, that plaintiff would sell the three boats for "a sum agreed upon by them" of which $7,500 was "to be paid down in cash" and the balance in installments then "agreed upon" with 6 per cent interest, and the purchaser to carry insurance on the boats in the name of defendant; Moreno entered into an agreement whereby plaintiff agreed to furnish funds to enable Moreno to enter into the contract; thereafter the contract was modified by the parties to include another boat for $5,000 to be paid in installments agreed upon by them; the contract was invalid and unenforceable in Mexico because it was not in writing and the doctrine of part performance is not the law of Mexico, and the oral contract was not acknowledged before a notary public or recorded by the notary.

(6) Any funds received by defendant from plaintiff were paid on behalf of Moreno, who is a necessary party to the action.

(7) The down payment was not made, except $2,500 which

was paid to defendant as a deposit and to protect him against loss by failure of the purchasers to complete the contract; neither plaintiff nor Moreno secured insurance as provided in the agreement, and Moreno is in default under the agreement.

(8) Any sums received by defendant in regard to the contract have been forfeited by reason of said default.

Defendant also alleged a counterclaim, based upon the alleged failure of plaintiff to perform the agreement alleged by plaintiff. (Defendant stated, in alleging the counterclaim, that he did not admit he entered into such a contract as alleged by plaintiff but "if such a contract be found to have been made between them" then defendant is entitled to damages on his counterclaim.)

Plaintiff testified as follows: He resided in Los Angeles and was in the window cleaning and sponge business. He first met defendant in the first part of February, 1954, at Ensenada and he told defendant that Moreno (an employee of defendant) had said that defendant was interested in selling the boat business. Defendant said the price was $16,500. Plaintiff said that as an American citizen he could buy only 49 per cent of a business in Mexico. Plaintiff also said that Moreno had told him that Moreno was dickering to buy the business but could not buy all of it. Plaintiff said he was there "more or less to buy the other part." Defendant said he would like to sell all of it to one person and be through with it, but it was difficult to do so and he realized it, and he was going to sell 49 per cent to plaintiff and the balance to Moreno. Defendant asked him if he was interested in buying it. Plaintiff said that he would buy 49 per cent in it but he (plaintiff) would have to see his brother in Los Angeles, and if defendant would come up in a week or two plaintiff would give him a definite answer. The boats involved in that conversation were the Beatriz, LaPaz and D-D. Moreno was a citizen of Mexico and an employee of defendant, who sold tickets for fishing trips on the boats. In the middle of February, 1954, defendant was in plaintiff's office in Los Angeles, and on that occasion the other persons present were: plaintiff, plaintiff's brother Eugene, plaintiff's wife, his secretary Miss Matsuda, and his employee Blake. At that meeting defendant asked if they had come to a decision. Plaintiff said that he and his brother had talked it over and would accept $16,500 and take it. Defendant said it was $17,000—that he had to spend about $500 to repair the D-D. Plaintiff and his brother discussed

the additional charge of $500. Plaintiff accepted the price of $17,000. They discussed how much 49 per cent of $17,000 would be. Plaintiff's secretary figured the amount to be eight thousand and some odd dollars. Defendant said that they had made a deal. They shook hands on it. Defendant asked for money. Plaintiff said that it was necessary to have proper legal papers issued by the Mexican government in order for the sale to be made and he would pay when defendant had them. Defendant said that that was a formality. Plaintiff said until that happens he (plaintiff) would have to wait. Defendant said, "O. K. I will get them." Plaintiff saw defendant again on February 27 in Ensenada, and plaintiff asked him if he had the papers. Defendant said he would take care of that; and that he had to have money to pay bills —he was desperate and was being pressed for money. Plaintiff said that he could not pay the money without having the papers. Defendant told plaintiff not to worry, that he (defendant) would get them. Plaintiff then gave defendant a check for $500. Defendant said the money would be applied as part payment of the percentage plaintiff was buying. Defendant also said that the boats should be repaired, painted and put in the water, and that he did not have any money and that plaintiff would have to assume the expense of the repairs which would be credited against the value of the boats. Shortly thereafter defendant introduced plaintiff to Bonifaz, defendant's lawyer, and then defendant and the lawyer had a conversation in Spanish. Then defendant said the permit to sell Mexican property to plaintiff would be obtained, and that the lawyer would draft it. Plaintiff and the defendant had a conversation with Moreno wherein plaintiff told Moreno that defendant suggested that they get things started by fixing the boats. Moreno said he was in favor of it, and he would let plaintiff know what materials were needed. Plaintiff said he would return to Los Angeles and wait until the permit was issued. Prior to March 12 defendant telephoned plaintiff and said he needed money desperately, and he asked plaintiff to come to Ensenada. Plaintiff saw defendant on March 12 in Ensenada and paid him $2,000. Defendant said that everything was going fine. Then they went to the place where the boats were being repaired, and defendant pointed out what was being done to repair them. Plaintiff opened an account in an Ensenada bank, and he and Moreno used it in paying the expenses for the repairs. About a week later plaintiff saw defendant in Ensenada, and defendant said that

Moreno wanted to be paid for the work he was doing on the boats. Defendant told plaintiff to pay him. Plaintiff paid $100 to Moreno. Defendant said that he was dissatisfied with the arrangement with Moreno and he was going to replace him. Plaintiff was making weekly trips to Ensenada and each time defendant requested money, and plaintiff made a counter request for the papers. On March 23 plaintiff received (in Los Angeles) a telegram from defendant. (The telegram stated: "Have made satisfactory arrangements finance I needed thru bank here stop original deal off will consider part of business only as you have not fulfilled your part.") Plaintiff went to Ensenada and asked defendant what the telegram meant. Defendant said he was not going to sell to Moreno and that he would form a corporation and that plaintiff's 49 per cent would be given to him in stock. Plaintiff said it was a good idea. Defendant said he would replace Moreno with Gonzales, the brother-in-law of defendant, and would give Gonzales 15 per cent of the stock. Defendant asked Bonifaz, his lawyer, to prepare the papers for permission from the Mexican government. Defendant asked plaintiff if he wanted to put another boat, the Frieda III, in the deal for $5,000 and make it a $22,000 deal. Plaintiff said he would have to see his brother about it. During the first week in April, defendant was in plaintiff's office in Los Angeles, and on that occasion the persons present were: plaintiff, plaintiff's brother, plaintiff's wife, and his secretary. Defendant asked if he had decided about taking the Frieda boat. Plaintiff replied that he would accept it. They figured that 49 per cent of the $22,000 would be about $10,700. Defendant said they would make $15,000 that year from the boats. About April 18 plaintiff saw defendant in Ensenada and defendant told him that he (defendant) was going to run the boat business until things were settled. Plaintiff replied that it was costing him money to go to Ensenada every week "making payroll" and that defendant was welcome to take the business over and run it. Defendant ran the business after April 18. On May 23 defendant told plaintiff that the business was worth $30,000 at that time. Plaintiff said that they had agreed on $22,000. Defendant said that he knew that but it is now $30,000 and it would go up to $35,000. Plaintiff said that it looked as if defendant did not want to make the deal. Defendant said it was no deal and he would give plaintiff's money back to him. Plaintiff said he had paid "fifty some odd hundred dollars." Defendant said he wanted to

know exactly because he did not want anyone to feel that he had cheated him.

The $500 check (Exhibit 1) was drawn on the Bank of America in Los Angeles, California, was payable to and endorsed by defendant, and was paid by the bank. A notation on the front of the check was: "Deposit on Three Boats (D-D, LaPaz and Beatriz in Ensenada, B. C. Mexico.)"

Defendant wrote and signed a receipt for the $500, which receipt was as follows: "March 1st 1954. Received from Mr. Victor Glasband the amount of Five Hundred Dollars ($500.00) on account of three sale of three boats (D. D. LaPaz and Beatriz. John Hussong."

The receipt for $2,000 (Exhibit 2) was as follows: "March 12th 1953 Received on a/c $2,000.00 for D D, LaPaz & Beatriz from Victor Glasband. John Hussong."

Plaintiff's testimony as to the conversation with defendant in plaintiff's office in Los Angeles in the middle of February (to the effect the contract for the three boats was made there) was corroborated by his brother, his wife, his secretary, and his employee Blake. Also, plaintiff's testimony as to the conversation with defendant in plaintiff's office in Los Angeles in the first week of April (to the effect the contract for the four boats was made there) was corroborated by his brother, his wife, and his secretary.

Defendant, called as a witness by plaintiff under section 2055 of the Code of Civil Procedure, testified as follows: On February 12, 1954, Gonzales and Moreno introduced plaintiff to defendant in Ensenada, and nothing was said on that occasion about buying boats. On February 21 plaintiff and Moreno went to defendant's house and plaintiff told defendant that he heard that defendant wanted to sell the boats; and plaintiff said he had enough money to pay $17,000 for them, which amount Moreno said was the price. He (defendant) had told Moreno that he would pay him $500 commission on the sale of the boats. Plaintiff said he could pay only $7,500 down and $500 a month for the boats. Plaintiff made an offer of $7,500 down and $500 a month with 6 per cent interest on the boats. Bonifaz, the lawyer, came over and told plaintiff that he could not buy boats in Mexico. Plaintiff said he knew that, and he was going to furnish the money and that he and Moreno were going "to partnerships." Plaintiff said he was going to lend the money to Moreno. Plaintiff said he was going to put in all the money. Moreno was going to divide the profits with plaintiff and have a salary of $150 a

month. Neither Moreno nor plaintiff said that they had already made a deal between themselves. Defendant had no details of a private contract between Moreno and plaintiff— he only knew the principle of it that they were partners. On February 27 plaintiff told defendant that he wanted to give defendant some money, and he gave defendant the $500 check. Plaintiff came to Ensenada about every week and each time he brought supplies, paint and things. On March 12 plaintiff paid $2,000 to defendant on account.. Defendant was in plaintiff's office in Los Angeles on March 4 and they talked about insurance, and nothing was said about buying the boats. He was not in plaintiff's office in the middle of February.

The manner in which the presentation of plaintiff's case was brought to a close should be noted. While plaintiff's counsel was cross-examining defendant under said section 2055 (in an effort to prove the contract was accepted in Los Angeles), the judge said it was not material whether the acceptance of the contract took place in Los Angeles because the last act that made it an enforceable contract was the payment of $500 which took place in Mexico. Thereafter the judge and counsel for plaintiff engaged in a discussion, with reference to the law of contracts, which covered 13 pages of the transcript. At the end of the discussion the judge said that at the next session of court he would have the case sharpened down to essential points, and that his final decision would follow the nonsuit theory unless he was shown cases to the contrary. At the next session of court the judge said, among other things: whether we look at the statute of frauds as creating an invalid contract or a voidable contract it is not material; if we consider the acceptance as a complete acceptance we will have the situation where there was no writing and therefore no enforceable contract; the part payment was made in Mexico, and the only thing that could give vitality to it would be the law of Mexico; the $500 check, the receipts, and the telegram did not amount to a sufficient memorandum because those documents did not, in the language of section "214 of the Restatement," go far enough to state the terms of the contract; it followed from what he said that he could not hold that plaintiff had a contract and therefore the plaintiff could not recover on the theory that he had an enforceable contract; where that leaves the plaintiff could not then be determined because the court did not have the testimony of defendant as to what the terms of the contract were as he

indicates it. The judge stated further that the views which he expressed would be followed and if counsel on either side wanted to make an offer of proof regarding further matters the offer could be dictated into the record; and that the court, on its own motion, would exclude evidence that runs counter to the views he expressed.

Counsel for plaintiff offered to prove that plaintiff paid directly to defendant $2,500 at the special instance and request of defendant, and that plaintiff expended for the benefit of defendant $2,799 to repair boats owned by defendant; that the money was paid pursuant to an oral contract made in Los Angeles, California. (A further part of the offer pertained to the provisions of the contract and the breach thereof as alleged in the complaint.) Also, a part of the offer of proof was that, by defendant's breach of the contract, defendant had been unjustly enriched in the amount of $5,299, the money actually paid to and for the benefit of defendant. Without an objection being made to the offer, the judge said the objection would be sustained.

Plaintiff further offered to prove, by reference to bank checks, that he paid $2,799 for repairing defendant's boats. The judge said that the objection would be sustained upon the theory that if there is no contract, under the law, there cannot be a recovery for a breach of it. The judge also said plaintiff had alleged an express contract, a breach of the express contract, and resulting damages; and, under the position of the pleadings, the evidence as to payments to defendant was not admissible.

Counsel for plaintiff asked if the judge would consider an amendment to the complaint setting forth a cause of action for unjust enrichment in connection with the payments to and on behalf of defendant. The judge said: ''You can't do that now, we have run for several days trying this case on your theory and on the defendant's theory and it will have to go the one way or the other.'' The judge said he would preclude plaintiff from making any offer to amend the pleadings to conform to proof. Then counsel for plaintiff said there was no further cross-examination of defendant and that plaintiff was compelled to rest.

Thereupon, defendant was called as a witness on his own behalf. He testified that he never offered to sell 49 per cent interest in any of his boats to plaintiff.

The findings were: Plaintiff did not enter into an agreement with defendant for the purchase of an interest in the boats.

Plaintiff did not pay defendant $500 or $2,000 or any sum on account of such alleged agreement. It is not true that the parties agreed that plaintiff would assume payment of such moneys as would be necessary to repair the boats, and that such payment would be credited to the purchase price. Plaintiff did not tender to defendant $5,481 or any sum in payment of his obligation for said alleged interest in the boats. Defendant did not agree to make application for approval of the Mexican government for the transfer of an interest in the boats to plaintiff. Plaintiff had not performed all conditions set forth in his alleged agreement. Defendant has not failed or refused to perform an agreement made by him with plaintiff. Plaintiff has not been damaged by any breach of agreement by defendant. The only agreement made by defendant with respect to the boats was to sell the same to Tomas Moreno upon terms agreed upon by them. Any sums received by defendant from plaintiff were paid on behalf of Tomas Moreno. Moreno is a necessary party to any action to recover sums so paid. No findings are made as to the counterclaim of defendant because no evidence was heard thereon.

The alleged defense to the effect that the contract was illegal, under the Mexican law, because plaintiff did not have a ''Visitor For Business Permit'' is not sustained. There was no evidence regarding the Mexican law. ■ The court could not take judicial notice of the foreign law. (See *Estate of Kennedy*, 106 Cal.App.2d 621, 626 [235 P.2d 837].)

Likewise, the alleged defense to the effect that under a Mexican statute of frauds the contract was invalid is not sustained. ■ In the absence of proof of the law of Mexico as to a statute of frauds, it will be presumed that the law of Mexico on that subject is the same as the law of California. (See *Estate of Pusey*, 177 Cal. 367, 372-374 [170 P. 846]; *Hickman* v. *Alpaugh*, 21 Cal. 225, 226.) Section 1624a of the Civil Code of California (statute of frauds) provides that a contract to sell goods of the value of $500 or upward shall not be enforceable by action unless the buyer shall give something in part payment or unless some note or memorandum in writing of the contract be signed by the party to be charged. Defendant states in his brief that no reliance is made upon the statute of frauds to sustain the judgment.

The alleged defense to the effect that the amounts paid were forfeited because plaintiff failed to secure insurance is

not sustained. Defendant concedes that there was no evidence in support of that defense.

The findings (1) that the only agreement made by defendant with respect to the boats was to sell the same to Moreno, and (2) that any sums received by defendant from plaintiff were paid on behalf of Moreno, are not supported by the evidence. Defendant did testify that he never offered to sell 49 per cent interest in any of his boats to plaintiff. It is admitted by defendant that plaintiff paid $2,500 to him. The receipt for the $500, which is in defendant's handwriting and is signed by him, states that the money was received from plaintiff on account of "sale of three boats (D.D. LaPaz and Beatriz." The receipt for $2,000, which is in the handwriting of defendant and is signed by him, states that the money was received from plaintiff on "a/c" for D D, LaPaz and Beatriz. The $500 check which was drawn by plaintiff and endorsed by defendant, contained a notation thereon that it was a deposit on the three boats. Moreno did not testify. No one testified that those amounts were paid on behalf of Moreno. Defendant did testify that plaintiff said that he and Moreno were going "to partnerships." He also testified that he had no details of a contract between them—he knew they were partners. The evidence was not sufficient to prove the partnership. Defendant did not testify that he made a contract with Moreno. As above stated, he testified that he did not offer to sell 49 per cent to plaintiff.

It was an abuse of discretion not to permit plaintiff to amend his complaint to allege unjust enrichment of defendant by reason of the payment of $2,500, and the payment of $2,799 for repairing defendant's boats. In *Desny* v. *Wilder*, 46 Cal.2d 715 [299 P.2d 257], it was said at page 751: "Great liberality is indulged in matters of amendment to the end that lawsuits may be determined upon their merits." It was also said therein (pp. 751-752): "[T]he test is not whether under technical rules of pleading a new cause of action is introduced, but rather, the test is whether an attempt is made to state facts which give rise to a wholly distinct and different legal obligation against the defendant." In the present case the amendment would not give rise to a wholly distinct and different legal obligation of defendant. The complaint herein alleged that the $2,500 had been paid to defendant, and that the $2,799 had been expended for repairing the boats. The prayer of the complaint asked for damages which included those specific amounts. It is clear that de-

fendant received the $2,500 from plaintiff. It appears from plaintiff's offer of proof that he probably could prove that he expended $2,799 in repairing defendant's boats. There was no evidence upon which to base a forfeiture of those amounts.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied December 27, 1956, and respondent's petition for a hearing by the Supreme Court was denied January 30, 1957.