[Civ. No. 389. Third Appellate District.—November 25, 1908.]

In the Matter of the Estate of BILLINGS M. RICHMOND, Deceased. ELIVA M. FERGUSON et al., Heirs and Devisees, Appellants; SAMUEL M. COPPIN, Executor, Respondent.

ESTATES OF DECEASED PERSONS—MORTGAGE IN EXECUTOR'S NAME—ASSIGNMENT TO ESTATE—LOSS ON FORECLOSURE—CONCLUSIVE SETTLEMENT OF ACCOUNTS.—When an original note and mortgage taken in the executor's name without authority was reported by the executor to the court, and adjudged to be for the best interest of the estate, and was assigned thereto, and was foreclosed in the name of the estate with some loss, the settlement made thereof in the annual accounts of the executor is conclusive, and cannot be assailed in settlement of his final account.

ID.—VALUE OF LAND—IMMATERIAL ON FINAL ACCOUNT.—The loss on the sale of the land and the present value of the land at the time of the settlement of the final account are immaterial. No deterioration in value can affect the adjudication in the settlement of the annual accounts.

ID.—ATTORNEY'S FEES—DISCRETION OF COURT.—The allowance made to the attorney for the administrators on settlement of the final account of the executor, in view of previous allowances, and of all the facts connected with the administration of the estate, was largely in the discretion of the trial court sitting in probate, who was in a position justly to measure the value of the attorney's services, and its discretion will not be interfered with when no plain and palpable abuse of its discretion appears from the record upon appeal.

APPEAL from an order of the Superior Court of Sacramento County, settling the final account of an executor. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

Philip S. Driver, for Appellants.

S. Solon Holl, for Respondent.

CHIPMAN, P. J.—This is an appeal by the contestants from the order settling the final account of the executor, being the order and account considered on the executor's appeal, No. 388, this day decided. The contestants appeal from the

order allowing the executor a credit of $2,250 for property on hand, being certain land in Placer county. Also from the order allowing the sum of $1,000 as attorney's fees.

1. It appears that in his account for 1889 the executor reported the loan of $1,500 to one Osborne and wife, secured by note and mortgage on the land in question. The item was contested on the ground that the loan was made by the executor in his individual name and without any order of court. At the hearing of that account the court found "that this loan was made for the benefit of the estate, and as a means of investing the money of the estate, and was made in good faith by the executor." The court also found that the mortgage given as security was of real estate, "ample and complete security for the payment of the sum loaned, and although irregularly made," it was nevertheless "an advantage to the estate and the executor having executed proper assignment of this mortgage to the estate, he is entitled to be credited in his account with the sum loaned." The account was accordingly settled and allowed. In subsequent accounts, which were settled and allowed, this transaction appeared, the executor charging himself with interest collected on the note and taking credit for the note and mortgage as property of the estate.

In his account filed in 1898 he reports the mortgage as "foreclosed and bid in by the executor for the estate valued at $2,100.00."

It appears from the record now here that a decree of foreclosure was entered August 9, 1897, and an order of sale made October 14, 1897, and filed and returned December 11, 1897, with commissioner's report and account of sale reporting that he had sold the property to Samuel M. Coppin and issued to him a certificate of sale, dated November 13, 1897, which was duly recorded. Witness Frank L. Spencer testified that he was engaged in the business of buying and selling land, and was familiar with the land in question, the southeast quarter of section 17, township 13 north, range 9 east, and "that the value of the land was not over $2.00 per acre."

It appears that the transaction was fully reported to the court, as we have seen, passed upon, approved and the account settled and allowed, in 1889, and in several subsequent accounts. Upon the authorities cited in No. 388 (same title and case as this), we think the order then made is conclusive.

The present value of the land is immaterial.  When the loan was made the security was found by the court to be ample. No deterioration in value since that time can affect the conclusiveness of that adjudication.

2. It appears that the executor was allowed attorneys' fees in his account filed October 13, 1890, the sum of $2,000.  In 1893 he was allowed the further sum for like purpose of $50; also in 1895 a further sum of $50; in 1898 a further sum of $25, and in 1889 the sum of $25.  In his final account the court allowed the executor $1,000 as attorneys' fees.

S. Solon Holl testified that he was employed by the executor as attorney for the estate immediately after the death of decedent, and that ever since that time he had "rendered all the legal services necessary in the settlement of said estate up to the present time; that he counseled and advised the executor in all matters pertaining to the settlement of said estate and the investment of money thereof."  The will provided that final distribution should not be made until the youngest child had come of age, which had not occurred at the filing of the account.  The delay in settling the estate is thus explained.  The trial judge, sitting in probate, was in position to justly measure the value of the attorney's services, and the discretion rested with him to fix the amount.

It was said in *Estate of Straus,* 144 Cal. 553, [77 Pac. 1122]: "The allowance which shall be made for attorney's fees is largely in the discretion of the court, and is estimated upon the services which are necessarily, and properly, rendered to the executor in the administration of the estate," and is to be determined "upon proper *data,* furnished at the hearing of the application."  In the *Estate of Byrne,* 122 Cal. 260, [54 Pac. 957], the court expressed the opinion that the amount allowed the attorney was "extremely meager and far less than the sum we should have been willing to approve, but there is no ground upon which we can hold that the superior court abused its discretion in fixing his (the attorney's) allowance in that amount."  In *Freese* v. *Pennie,* 110 Cal. 467, [42 Pac. 978], it was held that the trial court is not bound by the opinion of experts as to the value of legal services; that while such evidence is proper and admissible by way of assistance to the court, "it is not at all conclusive upon the trial court; and it is for the court to say, upon a consideration of all the evidence, taken in connection with its

best judgment, what would be a fair and just allowance for the services rendered. . . . When a court has done this, this court, as an appellate court, only has the right to interfere with its judgment when a plain and palpable abuse of its discretion (for it has a large discretion in such matters) has occurred.''

No fact in this record is called to our attention from which we would be justified in holding that the court abused its discretion. The probate judge had a right to take into consideration the value of the property involved in the estate, the time necessarily occupied in its settlement and the services required of the attorney, and other considerations which presumably were within the knowledge of the judge though not made part of this record.

It appears from the record that the mortgaged property was bid in at the foreclosure sale by the executor in his own name, and that the commissioner's certificate of sale issued to him personally and as such was recorded by him. There is no evidence of his having assigned this certificate to the estate or to the heirs of decedent. So far as appears, the title is now in Coppin as an individual. He reports the property as belonging to the estate and has credit for it as such. He should be required to make proper conveyance so that the title will rest where it belongs if this has not already been done.

The order is affirmed.

Burnett, J., and Hart, J., concurred.