[Civ. No. 14369. First Dist., Div. One. June 12, 1950.]

Estate of H. C. MERRITT, JR., Deceased. PACIFIC STATES CORPORATION (a Corporation), Appellant, v. HELEN MERRITT, as Executrix, etc., Respondent.

Derthick & Cusack for Appellant.

Young, Hudson & Rabinowitz for Respondent.

PETERS, P. J.—This is an appeal by the Pacific States Corporation, principal creditor of the estate of H. C. Merritt, Jr., from the decree settling the final account of the executrix, and from that portion of the decree awarding compensation to the executrix and her attorney for extraordinary services.

The estate is insolvent. On distribution it developed that the approved claims of the general creditors against the estate totaled $1,070,044.79. The sole remaining asset of the estate, after paying all preferred creditors and the expenses of administration, was $14,253.20. After a contested

hearing, the probate judge found that this sum was too small to compensate the executrix and her attorney for their extraordinary services to the estate, but held that since that sum was the only money available it should be divided equally between the executrix and her attorney, awarding each $7,126.60. The sole point raised by appellant is that to award all of the assets of the insolvent estate to the executrix and her attorney, for extraordinary services, was, under the circumstances, so unreasonable as to constitute an abuse of discretion as a matter of law.

The facts are as follows: Helen Merritt is the surviving wife of H. C. Merritt, Jr. The Pacific States Corporation, the appellant, is largely owned by H. C. Merritt, Sr. Helen was appointed executrix of her husband's estate on August 21, 1945, and served continuously until finally discharged in April of 1949, a period of three years and eight months. Francis W. Murphy, all during the administration of the estate, was the attorney for the executrix. The affairs of the estate were in a badly muddled condition, and the estate was clearly insolvent. After the preferred creditors were paid, there were unpaid and approved general creditors' claims totaling $1,070,044.79, of which amount $1,002,784.36 represents the unpaid claims of appellant. At the time of hearing the final account the sole asset of the estate was $14,253.20 in cash. During the administration of the estate, the executrix, as widow, was allowed a family allowance, receiving a total of $25,500. The statutory compensation allowed her amounted to $2,253.51. Her attorney received an equal sum.

The hearing on the final account was heard on the entire records of the estate and on the final account and report of the executrix. The final account is 50 pages in length, and the report is 64 pages long. The nature of the various services rendered are there set forth in detail. It is unnecessary to do any more than briefly summarize these services.

During the course of administration three separate sales of real property were made, in which notices of sale were prepared and published, returns of sale made, and confirmations, after notices and hearings, sought and secured from the probate court. Four pieces of automotive equipment were separately sold in which notices of sale were given, bids called for, returns of sale made, and, after notices and hearings, confirmations sought and secured. In similar fashion

some personal property located in Madera County, and some other personal property coming into the estate by virtue of a claim against one Felix Smith, was sold. One hundred shares of stock of the Cuban Atlantic Sugar Company were sold, after filing a petition and receiving authority of the court to sell. Some livestock totaling 1,451 head were sold in 35 different sales, and there were 33 separate sales of other personal property connected with the ranch. The estate realized $76,000 from these sales, which was $20,000 more than the appraised values of the properties.

The report also sets forth that the executrix and her attorney had more than 500 conferences in regard to settling the estate, and that the number of hours spent were beyond calculation. The executrix spent 63 days in trips away from her home in administering the estate.

In addition to the services to which reference has already been made, the executrix and her attorney were involved in considerable litigation on behalf of the estate. Appellant attacks the wisdom of this litigation and contends that the results secured were negligible. For purposes of clarity these various actions will be separately numbered.

*Action number 1* was by appellant corporation against respondent as executrix, and was filed in San Francisco. This action grew out of the fact that when Merritt, Jr. died, various head of livestock were pastured on lands of appellant, who had a claim for $14,263.87 against the estate for feed, pasturage, and care of these animals. The executrix was in doubt whether she or the estate had title to this livestock and many months were required to investigate the facts and to determine ownership. During this period of discussion many of the animals were sold, with the consent of appellant, and the moneys received placed in a separate account, which appellant finally attached. The complaint was in two counts, one based on the agister's lien with interest, totaling $15,137.57, and in the other appellant claimed title to all of the livestock on the theory that they had been purchased with appellant's funds. The executrix finally determined that the livestock had been the property of her husband, that she had no personal claim thereto, and that appellant's claim for feed, etc., was meritorious. She finally petitioned the court for permission to compromise this claim, and did compromise it for $12,637.57, which sum was paid to appellant. The appellant argues that this litigation was really to determine whether the respondent individually owned the cattle, and that any services rendered

by or to her in this proceeding were for her benefit in her individual capacity. While respondent settled the claim for about $2,500 less than was owed, and thus saved the estate that amount, this was done, according to appellant, by respondent breaking her word to appellant to pay the full amount of the claim. Of course, the compromise did successfully dispose of the claim that appellant owned the cattle.

*Action number 2* was also by appellant against respondent, as executrix, and was also filed in San Francisco. This was an action in six counts. Count one was based on promissory notes executed by the deceased in the sum of $1,008,208.02, plus interest for several years. The other five counts were for various sums totaling about $600,000, it being claimed that in five separate transactions the deceased had misappropriated these sums belonging to appellant. Respondent petitioned for approval to compromise this $1,650,000 action for $1,012,-784.36. The compromise was allowed and appellant secured a money judgment in that amount. By this compromise, all claims against decedent based on his alleged fraud and deceit were deleted, and the total claim of appellant compromised for over $600,000 less than was claimed by appellant. Appellant has recovered $10,000 in partial satisfaction of this judgment. Appellant contends that, had the claim on the promissory notes been properly investigated prior to its disallowance, it would have been allowed in full. Even as to the claim based on the notes, however, it was compromised for over $50,000 less than claimed. As to the claims based on fraud totaling over $600,000, and not allowed in the compromise, appellant claims that it would never have made these claims had the note claim been allowed. This is all conjecture and surmise. It was for the trial court to determine whether these and the other services were of value to the estate.

*Action number 3* was brought by the executrix in San Francisco against appellant to recover from it the value of decedent's services under a contract by which decedent was entitled to receive a percentage of the net profits Pacific States Corporation made on certain farm lands owned by Pacific States. The complaint asked for an accounting and for the agreed compensation. Appellant denied the alleged indebtedness and pleaded the judgment in action numbered 2 as an offset. Because of the death of decedent, proof was difficult to secure, and the action was finally compromised, with the approval of the court by allowing the executrix a $10,000 credit on the

judgment in action number 2. Appellant surmises, but offers no proof, that this claim could and should have been settled without litigation.

*Action number 4* was filed in San Francisco against the executrix. It appears that decedent had opened an account with the bank under the account name of "Ranch Managers," and had deposited therein checks payable to Pacific States Corporation in the total amount of $228,435.52. Decedent thereupon withdrew this money. Pacific States Corporation claimed decedent had no authority to withdraw the money, and filed suit against the bank to recover the total sum. The bank thereupon filed a contingent claim in the estate to protect itself in the event Pacific States Corporation recovered against the bank. The executrix rejected the claim and the bank brought this action against the estate. The bank and Pacific States Corporation settled their dispute by the bank paying appellant $50,000. The executrix had no defense against a claim in this amount and petitioned the probate court for permission, which was allowed, to permit judgment to be entered against the estate for this sum.

Appellant claims that this litigation was totally unnecessary, because the executrix had to admit that whatever amount the bank had to pay appellant was a just claim against the estate. The executrix contends that, in view of the large contingent nature of this claim, her resistance was justified.

*Action number 5* was brought against the estate by the divorced wife of decedent to recover from the estate money claimed to be due under a property settlement. The plaintiff in that action filed a claim for $900, and requested that $41,000 be impounded to provide a fund from which future payments could be made. The claim was rejected, and the executrix field a motion to modify the interlocutory. A hearing was had on this motion, and the matter submitted. Thereupon, the divorced wife brought the present action. Before trial the executrix, after negotiations, offered to settle this claim for $10,000, which offer was accepted, approved by the court, and judgment against the estate entered in that amount. Thereafter, this judgment was fully satisfied by paying to the divorced wife $3,755.40 in cash and by assigning to her certain promissory notes held by the executrix for the estate totaling $7,000. This settlement was authorized by the court. The claim of the divorced wife was admittedly a preferred claim. The resistance to this action saved the estate over $30,000. Appellant urges that this action involved no unusual

issues, and that no great amount of time was involved in handling it.

*Action number 6* was brought in San Francisco by the executrix against the Copper Mountain Products Company, it being alleged that the corporate defendant owed the estate some $32,000 on a certain promissory note executed by it in favor of decedent. This action was finally settled, so far as the estate is concerned, by assigning the promissory note to one Felix Smith as part of a transaction, under which Smith purchased some real and personal property and some stock belonging to the estate.

*Action number 7* was brought in San Francisco by the estate against the Red Star Mining Company, and resulted in a judgment against the mining company for $43,954.16. Executions were issued, and then it was found that the mining company was insolvent and that any attempt to collect the judgment would result in bankruptcy. Finally, the executrix sought and secured approval of the court to sell this judgment, and certain stock appraised at nothing, to one Oliver for $1,500.

This summary serves to indicate how difficult and burdensome the handling of this estate was. The probate court knew of the difficulties presented, and it was for that court to determine whether the various actions of the executrix and her attorney were necessary, and to evaluate them. Running through appellant's argument is the thought that, because it was by far the largest general creditor, it profited but little from the actions of the executrix, and that, had practically nothing been done by the executrix, the total result, so far as it was concerned, would have been but little different from the results secured after all of these actions. Appellant asks us to engage in hindsight and to infer that most of the actions of the executrix were unnecessary and should not have been taken. It must be remembered that the executrix owed a duty to the preferred creditors and to the other general creditors as well as to appellant. This duty she and her attorney seem to have performed remarkably well. It is not for us to engage in inferences against those indulged in by the trial judge, who was in a much better position than are we to evaluate the necessity and value of these services.

Appellant's main argument is that it can find no precedent for awarding to an executrix and her attorney of an insolvent estate the entire estate as payment for extraordinary services.

It contends that the litigation brought no new assets into the estate, and that, as widow of the decedent, executrix received a very generous family allowance. It further contends that all of the actions, with the exception of the action brought by the divorced wife of decedent, could have been avoided, and that all of the litigation was not worth the fees allowed.

The statement of facts is sufficient to refute most of appellant's arguments. The fixing of fees for the extraordinary services of executrix are provided in section 902 of the Probate Code, and for her attorney by section 910 of that code. Section 902 provides that an executrix shall be entitled, in addition to the statutory fees, to "Such further allowances . . . as the court may deem just and reasonable for any extraordinary services," while section 910 provides that the attorney, in addition to statutory fees, is entitled to "such further amount as the court may deem just and reasonable for extraordinary services." It is hornbook law that "In a probate matter it is particularly within the power of the trial judge, who has all of the records before him, to fix and determine what fees are proper." (*Guardianship of Vaughan,* 14 Cal.App.2d 594 [58 P.2d 742] ; see, also, *Estate of Hardenberg,* 18 Cal.App.2d 307, 310 [63 P.2d 1200] ; *Estate of Keith,* 16 Cal.App.2d 67, 70 [60 P.2d 171] ; *Guardianship of Jacobson,* 30 Cal.2d 312, 317 [182 P.2d 537].) Whether the claim on appeal is that the allowances for extraordinary services was too high or too low, the appellate courts are most reluctant to disturb the determination of the probate court, for the reason that the amount of such allowances rests peculiarly in the discretion of the trial court. Such discretion will be interfered with only when the amount of allowance is so far out of line as to constitute a clear and manifest abuse of judicial discretion. (*Estate of Broome,* 162 Cal. 258, 263 [122 P. 470] ; *Estate of Parker,* 186 Cal. 671, 672 [200 P. 620] ; *Estate of Iser,* 52 Cal. App. 405, 408 [198 P. 1014].) It is primarily for the probate court to determine the necessity for and to value the services of the executrix and her attorney. The trial court will, and presumably here did, take into consideration the value of the property, the time occupied, the nature of the services and their necessity. (*Estate of Richmond,* 9 Cal.App. 413, 415 [99 P. 558].) ██ Even where the litigation engaged in, or the services rendered, turn out to be entirely valueless, which was not the case here, the executrix and her attorney may be entitled to extraordinary fees. (*Estate of Allen,* 42 Cal.App2d 346 [108 P.2d 973].)

Appellant places great reliance on the *Estate of Lundell*, 95 Cal.App.2d 352 [212 P.2d 914, 214 P.2d 23], recently (December 28, 1949) decided by the Second Appellate District, Division One. There, the attorney for the executors settled a $150,000 claim of the estate against certain insurance companies, without suit, for $100,000. He was allowed $12,000 as a fee for extraordinary services. The appellate court did reverse this allowance on the ground that there was no evidence before the probate court of the extent or value of the services rendered. A hearing was denied in the Supreme Court. The appellate court states the general rules above set forth, but found an abuse of discretion sufficient to shock the conscience.

That case differs from the present one. Here, unlike the Lundell case, the executrix and her attorney offered detailed evidence of the nature and extent of the services rendered. The Lundell case simply stands for the proposition that an award of a fee for extraordinary services will not be approved unless there is some competent evidence introduced of the nature, extent and value of the services. That this is the proper interpretation of the Lundell case, and that the rule there announced is so limited, is illustrated by the recent decision of the Supreme Court (March 3, 1950) in *Warner* v. *Warner*, 34 Cal.2d 838 [215 P.2d 20]. That was an appeal from an order fixing attorney's fees pendente lite in a divorce action. It was contended on appeal that the allowance was too great and the Lundell case was relied upon in support of this argument. In disposing of this argument Mr. Justice Traynor, speaking for the majority of the court, held that the Lundell case "is not in point. In that case, an order awarding $12,000 extraordinary attorney's fees was reversed for the reason that the trial court abused its discretion in making the award without competent evidence to justify its conclusion that services of that value had been rendered." (Pp. 842-843.) Mr. Justice Carter, specially concurring, did so on the sole ground that the decision in the Lundell case "is in clear conflict with the holding of this court in the case at bar as well as the settled rule in cases of this character." (P. 843.) Only one justice—Mr. Justice Schauer—was of the opinion that the facts in the Warner case showed an abuse of discretion.

The services here rendered were extensive, time consuming, varied, and valuable. The trial court was in a much better position than we are to evaluate them and to determine

their necessity. The amount allowed for these services is certainly not, as a matter of law, too large. It is true that the estate is insolvent, and that the allowance of the entire estate for extraordinary fees is unusual. Undoubtedly, the probate court took those factors into consideration. But most of the activities of the executrix and her attorney were required because of what the probate court apparently thought were the exorbitant claims of appellant. It was the duty of the executrix and her attorney to resist these claims to protect the preferred and other general creditors. No abuse of discretion appears.

The decree is affirmed.

Bray, J., and Schottky, J. pro tem., concurred.